The SQUAXIN ISLAND TRIBE, et al.,
Plaintiffs-Appellants,

v.

The STATE OF WASHINGTON, et al.,
Defendants-Appellees.

No. 85–3509.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1985.

Decided Jan. 24, 1986.

Miriam L. Chesslin, Hobbs, Straus, Dean, & Wilder, Washington, D.C., for plaintiffs-appellants.

David E. Walsh, Atty. General's Office, Olympia, Wash., for defendants-appellees.

Before WRIGHT, REINHARDT, and BEEZER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

In this case we are asked to decide whether the State of Washington may lawfully regulate and tax tribal liquor sales to non-Indians. The tribes challenge the state's use of vendor agreements, claiming that the Liquor Control Board lacks authority to control tribal liquor sales.

FACTS

Appellants are four federally recognized Indian tribes in Western Washington. Each tribe enacted a tribal liquor ordinance authorized by 18 U.S.C. § 1161[1] and established a tribal liquor enterprise. The tribes purchased liquor from out-of-state distributors and sold it through tribal retail stores to Indians and non-Indians. Prices included tribal taxes but excluded state taxes and surcharges applicable to sales by state stores and vendors. Tribal prices were generally fixed lower than in state outlets to attract customers from off the reservations.

Washington maintains a monopoly liquor distribution system. Pursuant to RCW 66.-08.050, the Liquor Control Board purchases liquor from distributors and retails it through state stores and vendors at Board-fixed prices.[2]

When tribal liquor sales began in 1978, the Board considered these sales illegal and sought to terminate them. In January 1983, the Board adopted an emergency regulation permitting the appointment of tribes as state liquor vendors. WAC 314–37–010. Following the Supreme Court decision in *Rice v. Rehner*, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983), the Board amended the regulation to *require* a vendor agreement as a condition to tribal sales to non-Indians. When this action was filed, four Washington tribes (none of the appel-

---

1. Under 18 U.S.C. § 1161, liquor transactions in Indian country are not subject to prohibition under federal law if those transactions are "in conformity both with the laws of the State ... and with an ordinance duly adopted by the tribe...." Each ordinance here includes a provision requiring that tribal liquor sales conform to the laws of the State of Washington.

2. These prices include a 49.5 percent "markup" over the Board's cost, a state liquor sales tax of 17.1 percent (RCW 82.08.150(1), (4)), and an "add-on" tax of $1.96 per liter (RCW 82.08.-150(3), (4)). Proceeds from these assessments are divided between the state and political subdivisions. None of the proceeds are distributed directly to Indian tribes.

lants) had entered vendor agreements with the Board. Each agreement requires prepayment of the cost of the liquor, including all state taxes, at the time of delivery.[3] The agreements also restrict advertising, fix retail prices, and control tribal outlet locations.

The tribes filed for declaratory and injunctive relief to restrain the state from enforcing WAC 314–37–010 or other liquor control laws.[4]

In February 1984, the district court granted a preliminary injunction permitting the tribes to sell liquor without state interference. The injunction was conditioned on the posting of adequate security pursuant to Rule 65(c), Fed.R.Civ.P. The state counterclaimed for taxes due.

In July 1984, the district court granted partial summary judgment for the state, finding that (1) the liquor sales tax provisions apply to tribal sales to non-tribal customers and (2) tribes are not authorized to import or possess liquor for retail sale except in conformance with state liquor laws. However, the district court granted the tribes' motion for partial summary judgment, finding "the Washington State Liquor Control Board does not have the authority under WAC 314–37–010 to require Indian tribes to enter into vendor agreements."

In October 1984, the court denied the tribes' motion to dismiss the State's counterclaim for taxes owed. It found the tribes had consented to suit and waived sovereign immunity by electing to sell liquor during the life of the preliminary injunction.

In December 1984, the court entered a final judgment that incorporated its earlier rulings, dismissed the tribes' antitrust claims, dissolved the preliminary injunction, dismissed all claims for permanent injunc-

tive relief, and awarded $190,000 to the state on its counterclaim for taxes due. An appeal was timely filed.

ISSUES

On appeal, the tribes contend that (1) the state is not authorized to tax and control tribal liquor enterprises; (2) the Board's tribal vendor regulation is not authorized under state law and violates due process and equal protection; (3) the district court improperly dismissed the tribes' antitrust claims; and (4) the tribes did not waive sovereign immunity by filing suit, posting security under Rule 65(c), or electing to continue retail liquor sales during the preliminary injunction.

ANALYSIS

I. *Standard of Review*

This court reviews *de novo* a grant of summary judgment. *See, e.g., Castelli v. Douglas Aircraft Co.,* 752 F.2d 1480, 1482 (9th Cir.1985). Questions of statutory interpretation are also reviewed *de novo. Callejas v. McMahon,* 750 F.2d 729, 730 (9th Cir.1985).

II. *Jurisdiction*

■ In the judgment of December 3, 1984, the district court stated: "The Court has deemed it unnecessary to complete disposition of the case to reach Plaintiffs' other claims, including ... due process and equal protection claims arising under the Fifth and Fourteenth Amendments...."

The final judgment rule ordinarily would bar review of a judgment which failed to dispose of all claims. Here, the district court apparently believed that its ruling on the state law issue as to tribal vendor agreements obviated the need to reach the federal constitutional claims. This view is consistent with the well-established rule that state issues should be decided first and where state claims are dispositive, fed-

---

3. These agreements include quotas for tax-free purchases by the tribe based on estimated tribal sales to tribal members. The prepayment requirement differs from standard consignment arrangements with non-tribal vendors in which taxes are collected at the time of retail sales and are remitted periodically to the Board.

4. The tribes alleged the attempted control of tribal liquor sales exceeded the Board's authority, the Board's enforcement actions violated the Tribes' due process and equal protection rights, and the implementation of the regulation violated tribal sovereignty. The complaint was amended to include antitrust claims.

eral questions need not be reached. *Siler v. Louisville & Nashville R. Co.*, 213 U.S. 175, 193, 29 S.Ct. 451, 455, 53 L.Ed. 753 (1909).

We construe the district court's judgment as an attempt to dispose of all claims in the action, and we find that no practical benefits would accrue from a dismissal for lack of appellate jurisdiction. *See Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1171 n. 1 (9th Cir.1984) ("If it appears that the district court intended the dismissal to dispose of the action, it may be considered final and appealable."); *Wahkiakum Band of Chinook Indians v. Bateman*, 655 F.2d 176, 177 n. 1 (9th Cir.1981) ("[W]here ... the trial court believed it was disposing of the entire case and no useful purpose would be served by dismissal, we may exercise our discretion and hear the appeal.")

III. *State Authority to Tax and Regulate Tribal Liquor Sales*

■ The tribes appear to challenge the state's authority to regulate or tax tribal liquor sales to *non-tribal members*. This challenge must fail because tribal sovereignty is not infringed. *See Rice v. Rehner*, 463 U.S. 713, 720, 103 S.Ct. 3291, 3296, 77 L.Ed.2d 961 (1983) (state licensing requirements for tribal liquor sales to non-Indians do not infringe upon tribal sovereignty); *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 151, 100 S.Ct. 2069, 2080, 65 L.Ed.2d 10 (1980) (taxation of sales to non-Indians does not "contravene the principle of tribal self-government"); *Moe v. Confederated Salish and Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) (state may impose non-discriminatory tax on tribal sales to non-Indian customers and may require

tribal retailer to enforce and collect the tax).

In *Rice*, the Court upheld California's liquor licensing and distribution statutes as applied to tribal liquor sales. The Court concluded that tribal sovereignty interests were implicated only as to the sale of liquor to tribal members. *Id.*, 463 U.S. at 721, 103 S.Ct. at 3296. Here, the Board is not attempting to collect taxes on tribal liquor sales to tribal members. The tribes' attempt to challenge the tax as applied to non-Indians is without merit. The district court properly disposed of this taxation issue by summary judgment.

■ The only basis for challenging the state's regulation of tribal liquor sales is that it constitutes a direct burden on tribal members or the operation of tribal government. That challenge also fails. The Court in *Rice* employed a "backdrop" analysis informed by historical notions of tribal sovereignty and found that "tradition simply has not recognized a sovereign immunity or inherent authority in favor of liquor regulation by Indians." *Id.* at 722, 103 S.Ct. at 3297. In addition, state jurisdiction over the use and distribution of alcoholic beverages in Indian country arises from important state interests in controlling liquor traffic within its borders. *Id.* at 724, 103 S.Ct. at 3298.[5]

■ Contrary to the tribe's contention, the state's authority to regulate tribal liquor sales is not preempted by federal law. Section 1161 of Title 18 is a delegation of authority to the state to regulate tribal liquor sales, not a preemption in favor of the tribes.[6] *Rice*, 463 U.S. at 726, 103 S.Ct. at 3299. "Congress did not intend to make

---

**5.** The Court recognized the state's interest in regulating tribal distribution of liquor to avoid off-reservation "spillover" effects. "A State's regulatory interest will be particularly substantial if the State can point to off-reservation effects that necessitate State intervention." 463 U.S. at 724, 103 S.Ct. at 3298 (quoting *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 336, 103 S.Ct. 2378, 2387, 76 L.Ed.2d 611 (1983)).

**6.** The Court in *Rice* established that "because of the lack of a tradition of self-government in the area of liquor regulation, it is not necessary that Congress indicate expressly that the State has jurisdiction to regulate the licensing and distribution of alcohol." *Rice*, 463 U.S. at 731, 103 S.Ct. at 3301. The tribes admit the Court in *Rice* found that 18 U.S.C. § 1161 is congressional authorization for "state laws [to] apply of their own force to govern tribal liquor transactions." *Id.* at 726, 103 S.Ct. at 3299.

tribal members 'supercitizens' who could trade in a traditionally regulated substance free from all but self-imposed regulations." *Id.* at 734, 103 S.Ct. at 3303.

Nothing in *Rice* suggests that this preemption analysis would not yield identical results in a "monopoly control" state. Because there is no tradition of sovereign immunity in the area of liquor regulation or taxation and because the activity has potential for substantial impact beyond the reservation, we accord little, if any, weight to an asserted tribal sovereignty interest. *Id.* at 725, 103 S.Ct. at 3298.[7]

■ The tribes contend the state's pecuniary interest must be balanced against the tribes' need for revenues to sustain the tribes' existence. However, a state tax or regulation is not invalid merely because it erodes a tribe's revenues, even if the tax substantially impairs the tribal government's ability to sustain itself and its programs. *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 151–57, 100 S.Ct. 2069, 2080–83, 65 L.Ed.2d 10 (1980). As in *Colville*, the value marketed here by the tribes to non-tribal members "is not generated on the reservations by activities in which the Tribes have a significant interest" but is instead "solely an exemption from state taxation." *Id.* at 155, 100 S.Ct. at 2082. The tribes are not authorized "to market an exemption from state taxation to persons who would normally do their business elsewhere." *Id.*

■ The tribes contend the state's assertion of authority over tribal liquor sales is for "purely pecuniary purposes" to "maximize its revenues." They contend the Supreme Court's decision in *Rice* is not controlling here because it involved "licensing or procedural aspects of State liquor law" in the *"regulatory* context of the California free enterprise system."

This claim does not merit serious consideration. The tribes characterize the State's implementation activities as "pervasive State control" that "goes far beyond the minimal licensing requirement imposed in *Rehner.*" This characterization is consistent with the state's position that the "primary purpose of the liquor control system in Washington is control," not revenue.

## IV. *Tribal Vendor Regulation*

The tribes contend that, even if *Rice* authorizes regulation of tribal liquor sales, the Washington legislature has failed to assert the necessary jurisdiction and the Board lacks authority to enter vendor agreements with the tribes or otherwise regulate tribal liquor sales.[8] The tribes also contend that the Board's assertion of authority violates their constitutional rights.

---

**7.** The tribe's reliance on *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983); *Ramah Navajo School Board, Inc. v. Bureau of Revenue*, 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982); *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980); and *Crow Tribe of Indians v. Montana*, 650 F.2d 1104 (9th Cir. 1981), *cert. denied*, 459 U.S. 916, 103 S.Ct. 230, 74 L.Ed.2d 182 (1983), for the proposition that state authority is preempted by federal law, is misplaced. These cases involve tribal interest in value generated within the reservation boundaries such as hunting and fishing (*Mescalero*), mineral leases (*Jicarilla* and *Crow Tribe*), and harvesting Indian timber (*White Mountain*), or involve tribal exercise of traditional sovereign functions (*Ramah*). These cases are distinguishable from this challenge to

the state's authority to tax or regulate tribal liquor sales. In the area of regulating liquor, the "backdrop" analysis reveals no tradition of tribal sovereign immunity. *Rice*, 463 U.S. at 722, 103 S.Ct. at 3296–97.

**8.** The tribes' reliance on *McClanahan v. Arizona State Tax Comm'n.*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), and other cases for the proposition that state laws must be expressly applied to Indians to be valid is misplaced. These cases involve federal preemption analysis and apply the general rule: "State laws generally are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that State laws shall apply." *McClanahan*, 411 U.S. at 170–71, 93 S.Ct. at 1261. These cases do not support the tribes' contention that state laws must expressly include Indians or tribal activities to have legal effect on the tribes.

## A. Right to Import Liquor

█ The district court ruled that the tribes were not authorized to import or possess liquor for retail sale "in a manner contrary to State liquor law." The tribes claim to appeal this ruling, but they raise no arguments and cite no authority in support of a tribal right to import or possess liquor free of state intervention. Based on RCW 66.12.030, RCW 66.08.070, and RCW 66.44.160, the Board is authorized to import liquor into the state to the exclusion of the tribes. The district court's grant of summary judgment on this issue was proper.

## B. Vendor Agreements

█ The district court ruled the Board could not "require" the tribes to enter vendor agreements. The state does not appeal this summary judgment ruling,[9] but the tribes contend that the Board lacks authority to enter into "voluntary" vendor agreements with the tribes. This argument is without merit.

The Board is authorized under RCW 66.-08.050(2) to "appoint in cities and towns and other communities, in which no state liquor store is located, liquor vendors. . . . [S]uch vendors shall be subject to additional rules and regulations consistent with this title as the board may require." The tribes argue that the phrase "other communities" should be read to exclude Indian tribes or reservations in the absence of an explicit statutory reference to Indian tribes.

A recent Washington Supreme Court decision suggests that such an express reference might be necessary. *Queets Band of Indians v. State*, 102 Wash.2d 1, 4, 682 P.2d 909, 911 (1984) ("If the legislature had intended to include [tribes] within the terms of the reciprocity statute, it would have done so expressly.") However, in the area of liquor regulation, statutory provisions are to be "liberally construed" for the "protection of the welfare, health, peace,

morals, and safety of the people." RCW 66.08.010. *See also State ex rel. Thornbury v. Gregory*, 191 Wash. 70, 79, 70 P.2d 788, 791 (1937) ("Courts will interfere with the work of [the Liquor Control Board] only when it clearly appears that it has attempted to exceed its lawful authority.") The tribes have not alleged the voluntary vendor agreements are contrary to any specific provision of state law. Their attack is limited to allegations that the state lacks "jurisdiction" over the tribes.

In view of the strong state interest in controlling "spillover" effects of tribal liquor sales, *Rice*, 463 U.S. at 724, 103 S.Ct. at 3298, and the legislative intent to confer extensive authority over the regulation and sale of liquor, *Jow Sin Quan v. Washington State Liquor Control Board*, 69 Wash.2d 373, 382, 418 P.2d 424, 429 (1966), the tribes' claim that the state lacks authority to enter voluntary vendor agreements does not succeed.

## C. Constitutional Claims

█ The tribes contend that their due process rights have been violated because the Board's regulation does not prevent arbitrary Board action and has resulted in unacceptable differences in substantive terms among various tribal vendor agreements.

This claim lacks merit. The statutes defining the Board's powers, RCW 66.08.030 and RCW 66.08.050, set limits on the Board's authority. The challenged regulation itself, WAC 314–37–010, limits the scope of the Board's actions and sets forth specific criteria for appointing tribes as liquor vendors. The variance in "handling charges" assessed under various vendor agreements (from 5% to 12.5%) hardly constitutes the type of "uncontrolled discretion and arbitrary conduct" that the due process clause is intended to prevent.

█ The tribes also contend that discrimination between tribal and non-tribal

---

9. The state interprets the district court ruling to mean that vendor agreements cannot be required but may be voluntarily made. Alternatively, the state contends that the ruling would permit the tribes to designate a person to act as a liquor agent under Board conditions applicable to all liquor vendors.

liquor vendors violates their equal protection rights. The advance payment requirement imposed on tribal vendors was struck down by the district court and is no longer required by the state in tribal vendor agreements. The only other claim of discrimination is the denial of certain employment benefits to tribal vendors. However, the tribes do not challenge and appear to concede the state's contention that tribal vendor contracts are actually more lucrative than standard vendor arrangements.

In effect, the tribal vendor agreements appear to be a form of discrimination *in favor of* the tribes that will withstand an equal protection challenge. *Washington v. Confederated Bands and Tribes of the Yakima Indian Nation*, 439 U.S. 463, 500–01, 99 S.Ct. 740, 761, 58 L.Ed.2d 740 (1979); *Morton v. Mancari*, 417 U.S. 535, 551–55, 94 S.Ct. 2474, 2483–85, 41 L.Ed.2d 290 (1974).[10] No compelling state interest need be shown since preferential treatment for tribal members is not a racial classification, but a political one. *Morton*, 417 U.S. at 553 n. 24, 94 S.Ct. at 2484 n. 24. The state's interest in controlling the distribution of liquor within its borders insulates the Board's vendor agreements from equal protection challenge.

## V. *Antitrust Claims*

■■■ The tribes' amended complaint alleged violations of the Sherman Act, 15 U.S.C. §§ 1 and 2, including resale price maintenance, boycotting, exclusive dealing, and abuse of monopoly power. The state's answer asserted an affirmative defense based on state action immunity. The district court dismissed with prejudice all claims based on antitrust theories.

The tribes list the antitrust issue on appeal but fail to raise any argument in support of this claim other than indirectly in a footnote. The state claims that the tribes abandoned the antitrust claim by making it dependent on the tribe's right to import liquor. The state contends that no anti-

trust issue survives the partial summary judgment against the tribes on the importation issue. We disagree.

From the record, it is difficult to characterize and evaluate accurately the district court's dismissal of the antitrust claims. If the court sought to invoke on its own motion Rule 12(b)(6), Fed.R.Civ.P., the action appears to be erroneous both as to procedure and substance. *See Dodd v. Spokane County*, 393 F.2d 330, 334 (9th Cir.1968). Nor does the dismissal appear to be a proper partial summary judgment. The record does not include any motions by the state requesting partial summary judgment on the antitrust claims.

Here, the complaint initially avoided the state action immunity bar by alleging Board conduct beyond the scope of legislative authorization, *Southern Motor Carriers Rate Conference, Inc. v. United States*, —— U.S. ——, 105 S.Ct. 1721, 1730–31, 85 L.Ed.2d 36 (1985), so "dismissal without a more adequate factual record was ahead of its time" and the antitrust claims dismissal must be reversed. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 760 (9th Cir. 1980). We remand the antitrust claims with instructions to the district court to establish a reviewable record as to the procedural and legal grounds for its dismissal.

## VI. *Waiver of Sovereign Immunity*

The district court ruled that the tribes "consented to suit and waived their sovereign immunity when they elected to sell liquor under the terms of and during the pendency of the preliminary injunction." It entered a judgment permitting the state to recover the amount required to be posted as security for all liquor shipments received by the tribes from February 10, 1984, through October 1, 1984. The parties stipulated that the full amount of security required was $190,270. The tribes contend that the state's counterclaim was jurisdictionally barred by the tribes' sovereign immunity. The state argues that the district

---

**10.** The tribes contend that these decisions are inapplicable in state-tribal relationships but they misread *Washington*. Here, as in *Washington*, the state is acting under a federal statute explic-

itly adjusting the state's jurisdiction over Indians. *Washington*, 439 U.S. at 501, 99 S.Ct. at 761.

court had authority to require the posting of security under Rule 65(c), Fed.R.Civ.P., as a condition of the preliminary injunction, and that the tribes have waived their immunity to the limited extent necessary to permit disposition of the security.

The state admits that the tribes enjoy immunity from unconsented suits. *See United States v. Oregon,* 657 F.2d 1009, 1012 (9th Cir.1981). Consent to suit must be unequivocally indicated. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1676–77, 56 L.Ed.2d 106 (1978). The state concedes also that the tribes' suit for declaratory and injunctive relief did not constitute a waiver.

The issue is whether the tribes' continued liquor sales during a preliminary injunction or the posting of security under Rule 65(c), Fed.R.Civ.P., should be considered a waiver of sovereign immunity and a consent to the state's counterclaim for damages.

This court's recent decision in *Chemehuevi Indian Tribe v. California State Board of Equalization,* 757 F.2d 1047 (9th Cir.1985), *rev'd on other grounds,* — U.S. ——, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985), is dispositive of this issue. In *Chemehuevi,* the tribes filed a complaint for declaratory and injunctive relief to enjoin the Board from enforcing its cigarette tax against the tribe. The Board counterclaimed for taxes due. The district court held that sovereign immunity barred the counterclaim and any award of money damages and ordered the release of the funds held in escrow. *Chemehuevi Indian Tribe v. California State Board of Equalization,* 492 F.Supp. 55, 61 (1979). The district court in *Chemehuevi* recognized the tribe's immunity from suit "might create practical difficulties for the Board in attempting to enforce its cigarette tax laws against the Tribe" but concluded "these potential enforcement problems cannot override the Tribe's claim of sovereign immunity." *Id.* This court af-

firmed, holding that the tribe's "initiation of a suit for declaratory and injunctive relief does not constitute consent to the Board's counterclaim." *Chemehuevi,* 757 F.2d at 1053.

Here, the district court found that the tribes' continued liquor sales during the injunction constituted consent to suit. Because those continued sales were the very reason for the injunction, the effect of this ruling was to find that the initiation of a suit for injunctive relief resulted in a waiver of sovereign immunity. This is directly contrary to this court's decision in *Chemehuevi.*

We agree with the tribes that the state's counterclaim for taxes due is barred by sovereign immunity and that such continued liquor sales did not constitute consent to suit. Our decision in *Chemehuevi* is dispositive of this issue.[11]

However, we reject the tribes' contention that the district courts' disposition of the security posted under Rule 65(c) must be reversed. Recovery of security posted by tribes when the injunctive relief turns out to have been improvidently granted is an issue not decided by this court in *Chemehuevi.* For several reasons, we agree with the state that tribal sovereign immunity does not bar collection of the security posted under Rule 65(c).

First, Rule 65(c) expressly exempts only the United States and its agencies or officers from the security requirement. We decline to expand this exemption beyond its express boundaries.

Second, a wrongfully enjoined defendant may proceed by motion for judgment in the injunction proceeding without bringing a separate action. The summary procedure of Rule 65.1 is applicable to a principal as well as a surety on a bond. *Coyne-Delany v. Capital Development Board,* 717 F.2d 385, 391 (7th Cir.1983). *See also Monroe*

---

11. This court in *Chemehuevi* distinguished *United States v. Oregon,* 657 F.2d 1009 (9th Cir. 1981), where consent was found in the tribe's explicit agreement to submit issues to federal court and where the suit did not involve a money judgment but was analogous to an equitable action *in rem. Chemehuevi,* 757 F.2d at 1053 n. 7. Here, no such express consent to the counterclaim can be found.

*Division, Litton Business Systems, Inc. v. De Bari,* 562 F.2d 30, 32 (10th Cir.1977). No counterclaim is necessary. The state's right to collect on the security posted here arises because the tribes' pursuit of extraordinary equitable relief injured the state, not because the state has an independent cause of action.

Third, by applying for preliminary injunctive relief and posting security, a plaintiff consents to liability to the amount of the bond. *Commerce Tankers Corp. v. National Maritime Union,* 553 F.2d 793, 800 (2d Cir.), *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977). The grant of injunctive relief is conditioned on the posting of security. *Buddy Systems, Inc. v. Exer-Genie, Inc.,* 545 F.2d 1164, 1167–68 (9th Cir.1976), *cert. denied,* 431 U.S. 903, 97 S.Ct. 1694, 52 L.Ed.2d 387 (1977).

Finally, the extension of sovereign immunity to the recovery of security under Rule 65(c) could prove, in the long run, to be a detriment to Indian tribes. District courts have broad discretion to grant or deny preliminary injunctive relief. A district court might be hesitant to grant tribes such relief if no security would be available to compensate for damages caused by an improvidently issued injunction.

We hold that when tribes obtain a preliminary injunction to which they were not entitled, sovereign immunity does not bar the defendant from collecting the security posted, without resort to a separate action. Accordingly, we vacate the award of damages on the counterclaim and remand to permit the state to move to collect the security posted.

CONCLUSION

We affirm the court's decision that the State of Washington is authorized to tax tribal liquor sales to non-Indians and to regulate all tribal liquor sales. Because the record is insufficient to review the dismissal of the antitrust claims, we remand these claims to permit the district court to develop a record as to the procedural and legal grounds for its dismissal. We vacate the court's award of money damages on the state's counterclaim and remand to per-

mit the state to file a motion for collection of the security posted under Rule 65(c). Each party will bear its own costs on this appeal.

If there be a subsequent appeal from any district court action following this remand, it will be referred to this panel.