KEVIN KELLEY, District Attorney Forest County
You have asked a series of questions regarding the applicability of state liquor laws, chapter 125, Stats., to a privately-owned liquor establishment operating on the Sokaogon (Mole Lake) Chippewa Community Reservation. Specifically, you ask whether such a liquor establishment located on trust land is subject to state licensing requirements and, if so, who has authority to enforce state liquor laws on the reservation. Where the licensing laws do apply, a related question is whether liquor licenses issued to on-reservation businesses count toward the local quota. Since you do not specify whether the liquor establishment is owned and operated by a tribe member or by a non-Indian, this opinion will address both circumstances.[1]
For the reasons explained below, it is my opinion that state liquor laws are applicable to an on-reservation liquor establishment owned or operated by either a tribe member or a non-Indian, regardless of where the business is located within reservation boundaries. These privately-owned businesses also require licenses pursuant to chapter 125, and those licenses count toward the issuing municipality's quota. As with any violation of state liquor laws, county law enforcement agencies and the state revenue department have concurrent enforcement authority.
The United States Supreme Court held recently that state liquor licensing laws are applicable to liquor establishments on Indian reservations. Rice v. Rehner, 463 U.S. 713 (1983). In reaching this conclusion, the Court engaged in a two-part analysis to determine whether California's liquor licensing laws were federally preempted. The Court first determined the "backdrop" of tribal sovereignty, *Page 124 
and then addressed the question of whether the federal government has preempted state regulation in the area.
The backdrop of tribal sovereignty, against which the preemption question is viewed, is comprised of two factors: the tradition of tribal self-government in the area and the balance of state, federal and tribal interests involved. The Court in Rice found that Indian tribes have no tradition of self-government in regard to regulating liquor transactions.463 U.S. at 722-24. "[T]radition simply has not recognized a sovereign immunity or inherent authority in favor of liquor regulation by Indians." Id. at 722. In regard to the balance of state, federal and tribal interests, the Court stressed the fact that on-reservation distribution of alcoholic beverages has a significant impact beyond the reservation boundaries. Id. at 724. Because of these factors, the Court stated that it would accord "little if any weight" to the backdrop of tribal sovereignty in this area. Id. at 725.
The second part of the analysis is whether federal law has preempted state regulation. Federal law provides that liquor transactions in Indian country are lawful so long as they are "in conformity both with the laws of the state in which such act or transaction occurs and with an ordinance duly adopted by the tribe having jurisdiction over such area of Indian country, certified by the Secretary of the Interior, and published in the Federal Register." 18 U.S.C. § 1161. The Court in Rice held that in enacting this provision, "Congress authorized, rather than preempted, state regulation over Indian liquor transactions." 463 U.S. at 726. The legislative history of section 1161, the Court stated, indicates congressional intent to have state laws govern on-reservation liquor transactions so long as the tribe has enacted an ordinance approving such transactions.[2] Id.
The decision in Rice concerned the applicability of California's liquor licensing laws to a federally licensed Indian trader, and the Court did not, therefore, directly address the issue of a liquor establishment owned or operated by a tribe member. Nonetheless, there is little doubt that Rice governs all individual proprietors. Consequently, under the holding of Ricev. Rehner, both tribe *Page 125 
members and non-Indians would be subject to the chapter 125 licensing laws.[3]
These proprietors are, moreover, required to obtain a license from the Sokaogon tribal council (42 Fed. Reg. 38, 653 (1977)), and to abide by all tribal ordinances relating to the sale of liquor. See United States v. Mazurie, 419 U.S. 544 (1975). This dual licensing requirement may impose an increased financial burden on liquor establishments operating on Indian reservations. Several alternative solutions are possible, including reduced licensing fees, a joint state-tribal licensing board and coordination of licensing schemes to prevent the duplicate license requirement. McDonnell, Federal and State Regulation ofGambling and Liquor Sales within Indian Country, 8 Hamline L. Rev. 599, 604 (1985); Commission on State-Tribal Relations,State-Tribal Agreements: A Comprehensive Study, 84-85 (1981). These alternative mechanisms to alleviate the burdens on both Indian and non-Indian liquor establishment proprietors need to be explored jointly by the tribes and the state.
A related issue is whether state liquor licenses issued to on-reservation liquor establishments count toward the local quota. Section 125.51 (4) imposes a quota on "class B" licenses for on-premises sale of intoxicating liquor. As a general rule, a municipality is restricted to no more than one such license for every 500 population. Rice clearly indicates that on-reservation liquor licenses are includable in any limits set on the total number of licenses. 463 U.S. at 721. It is my opinion, therefore, that state "class B" licenses for the sale of intoxicating liquor issued to liquor establishments located on Indian reservations do count toward the municipality's quota. It should be noted, however, that the dissent in Rice, 463 U.S. at 737-38, indicates that the application of state regulations so as to deny licenses to Indian retailers may violate federal laws vesting the Commissioner of Indian Affairs with "the sole power and authority to appoint traders to the Indian tribes." 25 U.S.C. § 261; seealso 25 U.S.C. § 262. The resolution of this issue, however, is beyond the scope of this opinion. *Page 126 
Finally, you ask who has authority to enforce state liquor laws against liquor establishments located on the reservation. As already noted, state liquor laws apply on Indian reservations to privately-owned establishments serving liquor to the public. SeeRice, 463 U.S. at 726-35. General enforcement authority is found in section 125.14, which provides that "any peace officer may arrest without warrant any person committing in his or her presence a violation of this chapter . . . ." Sec. 125.14(1), Stats. Peace officers include sheriffs, undersheriffs, deputy sheriffs, police officers, constables, marshalls, deputy marshalls, and any employes of the state revenue and justice departments authorized to act under chapter 125. Sec. 125.02(12), Stats. Consequently, local law enforcement agencies and the state revenue department share concurrent jurisdiction with regard to enforcement of state liquor laws on the reservation.
In addition, liquor licensing laws may be enforced against individual proprietors through suspension or revocation of the license by either the issuing municipality or the state revenue department. Sec. 125.12(1), Stats. Failure to have a state license where one is required is punishable under the general penalty provisions of chapter 125 by a $500 fine or ninety days imprisonment or both. Sec. 125.11(1)(a), Stats. As with other state liquor laws, jurisdiction to enforce these licensing provisions rests concurrently with local law enforcement authorities and the state revenue department.
On the other hand, any violation of tribal or federal liquor laws is enforceable by the tribe or by the federal government respectively. In the absence of cross-deputization of county and tribal law enforcement officers, county officers have neither the authority nor the responsibility to enforce tribal liquor laws on the reservation.
In summary, it is my opinion that liquor establishments on the reservation owned and operated by either individual tribe members or non-Indians require state liquor licenses. Any "class B" intoxicating liquor license issued to a business located on an Indian reservation counts toward the municipality's quota. Enforcement of state liquor laws within reservation boundaries is vested concurrently in county law enforcement agencies and the state revenue department.
BCL:JDN
[1] This opinion is restricted, however, to private-owned businesses. The application of the state liquor licensing laws to Indian tribes or to tribally-owned business will be addressed separately in a forthcoming opinion.
[2] The Sokaogon Tribe adopted a tribal ordinance on April 28, 1977, legalizing the introduction, sale and possession of liquor on the Sokaogon Reservation. 42 Fed. Reg. 38, 653 (1977).
[3] Throughout its opinion in Rice, the Court emphasized the special nature and the "narrow context" of liquor regulation.463 U.S. at 722-24. Its holding that state licensing laws are applicable on Indian reservations should not, therefore, be construed to extend beyond the area of liquor laws. The opinion of this office that the state has no Jurisdiction to require an Indian cigarette distributor doing business exclusively on the reservation to obtain a permit, for example, remains unaffected.See 68 Op. Att'y Gen. 151, 155 (1979). *Page 127