The CHEMEHUEVI INDIAN TRIBE,
Plaintiff-Appellant, Cross-Appellee,

v.

CALIFORNIA STATE BOARD OF
EQUALIZATION; George R. Reilly;
Iris Stankey; William M. Bennett;
Richard Nevins; Kenneth Cory; indi-
vidually and in their official capacities
as members of the California State
Board of Equalization; Bank of Amer-
ica, N.T. & S.A., a national banking
association; and David Cordier, indi-
vidually and in his capacity as employ-
ee of the California State Board of
Equalization, Defendants-Appellees,
Cross-Appellants.

Nos. 83–2431, 83–2481.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 1986.

Decided Sept. 26, 1986.

Lester J. Marston, Ukiah, Cal., for plaintiff-appellant, cross-appellee.

James Cuneo, San Francisco, Cal., for defendants-appellees, cross-appellants.

Glenn M. Feldman and M. Frances Ayer, Ziontz, Pirtle, Morisset, Ernstoff & Chestnut, Washington, D.C., amici curiae, for Big Pine Band of Owens Valley Paiute-Shoshone Indians et al.

Before SCHROEDER, FLETCHER and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

Plaintiff Chemehuevi Indian Tribe challenged the State of California's authority to impose a state cigarette tax on cigarettes sold by the Tribe on the Chemehuevi Reservation to non-Indians. The district court ruled in favor of the state, concluding that the legal incidence of the tax fell upon the non-Indian purchasers, that application of the state tax was not preempted by federal statutes, that the tax did not unduly interfere with tribal self-government, and that the tax did not impermissibly burden Indian commerce.[1] On appeal, we reversed the district court's holding on the first of these issues, ruling that the incidence of the state tax fell upon the Tribe and that the tax was therefore unlawful. *Chemehuevi Indian Tribe v. California State Board of Equalization*, 757 F.2d 1047, 1057 (9th Cir. 1985). On a petition for a writ of certiorari, the Supreme Court reversed, holding that the legal incidence of the tax fell on the non-Indian purchasers of cigarettes, and not on the Tribe. *California State Board of Equalization v. Chemehuevi Indian Tribe*, — U.S. —, 106 S.Ct. 289, 290, 88 L.Ed.2d 9 (1985). Now addressing the Tribe's remaining claims of federal preemption, interference with tribal self-government, and burden on Indian commerce, we affirm.

### A. *Federal Preemption*

The Tribe financed the purchase of its business enterprises with a loan from the Department of the Interior's Revolving Loan Fund, established under the Indian Reorganization Act, 25 U.S.C. §§ 461–479. To finance improvements to its businesses, the Tribe obtained a second loan under the Indian Financing Act of 1974, 25 U.S.C.

---

**1.** In response to the Tribe's claim, defendant California State Board of Equalization filed a counterclaim for taxes allegedly due. In a separate decision, the district court held that the Tribe's sovereign immunity from unconsented suit constituted a bar to the Board's counterclaim, and accordingly dismissed the counterclaim. *Chemehuevi Indian Tribe v. California State Board of Equalization*, 492 F.Supp. 55, 61 (N.D.Cal.1979). On appeal, we affirmed this dismissal, 757 F.2d 1047 at 1053, and the Supreme Court declined to review this issue. *See* 106 S.Ct. at 290.

§§ 1451–1543. The Tribe contends that the ability of the state to impose its cigarette tax on non-Indian purchasers on the reservation is preempted by these two federal statutes. We disagree.

■ The Indian Reorganization Act and the Indian Financing Act are both statutes of broad general applicability. Through these statutes, Congress has demonstrated its support for principles of tribal self-government and economic development, but neither statute contains any specific provisions relating to or limiting a state's authority to tax transactions involving non-Indians. The fact that the Tribe's enterprises were financed pursuant to these statutes does not insulate tribal sales activities from any state involvement. *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 155, 100 S.Ct. 2069, 2082, 65 L.Ed.2d 10 (1980). We are bound by *Colville*'s holding on this point.

The Tribe also argues that the state cigarette tax is preempted by the Buck Act, 4 U.S.C. §§ 105–110, which provides in part: "Nothing in [this Act] shall be deemed to authorize the levy or collection of any tax on or from any Indian not otherwise taxed." *Id.* § 109. However, this provision, by its terms, goes no further than to preserve *existing* exemptions from taxation. The Supreme Court has observed that "the Buck Act itself cannot be read as an affirmative grant of tax-exempt status to reservation Indians." *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 177, 93 S.Ct. 1257, 1265, 36 L.Ed.2d 129 (1973).

Cases in which federal preemption has been found are distinguishable from the case at bar. In each, the Supreme Court found comprehensive and detailed federal involvement in or regulation of the particular tribal activity. *See Ramah Navajo School Board, Inc. v. Bureau of Revenue*, 458 U.S. 832, 839, 102 S.Ct. 3394, 3399, 73 L.Ed.2d 1174 (1982) ("Federal regulation of the construction and financing of Indian educational institutions is both comprehensive and pervasive."); *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 151, 100 S.Ct. 2578, 2588, 65 L.Ed.2d 665 (1980) ("the Federal Government has undertaken comprehensive regulation of the harvesting and sale of tribal timber"); *Central Machinery Co. v. Arizona State Tax Commission*, 448 U.S. 160, 166, 100 S.Ct. 2592, 2596, 65 L.Ed.2d 684 (1980) ("by enacting [the Indian trader] statutes Congress 'has undertaken to regulate reservation trading in … a comprehensive way' ") (quoting *Warren Trading Post Co. v. Arizona Tax Commission*, 380 U.S. 685, 691 n. 18, 85 S.Ct. 1242, 1246 n. 18, 14 L.Ed.2d 165 (1965)).

■ We conclude that Congress, in enacting the Indian Reorganization Act, the Indian Financing Act, and the Buck Act, did not foreclose a state tax on sales of cigarettes to non-Indians. The Tribe's preemption argument accordingly fails.

### B. *Interference With Tribal Self-Government*

The Tribe next argues that imposition of the state cigarette tax on sales to non-Indians on the reservation impermissibly interferes with the ability of the Tribe to govern itself. According to the Tribe, its legitimate interest in raising revenue to provide governmental services outweighs any state interest.

The doctrines of federal preemption and tribal self-government are "independent but related barriers to the assertion of state regulatory authority over tribal reservations and members." *Bracker*, 448 U.S. at 142, 100 S.Ct. at 2583. "[I]f the state action is not preempted by federal legislation or treaty, the state need only satisfy the test laid down in *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), that state action must not infringe on the rights of reservation Indians to govern themselves." *Crow Tribe of Indians v. Montana*, 650 F.2d 1104, 1109 (9th Cir. 1981), *amended*, 665 F.2d 1390 (9th Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 230, 74 L.Ed.2d 182 (1982). "Th[is] principle of tribal self-government … seeks an accom-

modation between the interests of the Tribe[ ] and the Federal Government, on the one hand, and those of the State, on the other." *Colville*, 447 U.S. at 156, 100 S.Ct. at 2083. In the case at bar, we must balance the state's interest in applying its cigarette tax to on-reservation sales to non-Indians against the impact from the tax's imposition on the Tribe's ability to govern itself effectively. *See Crow Tribe*, 650 F.2d at 1115.

The state's interest consists of its general desire to raise revenue to fund state-provided services, both on and off the reservation. The district court found that "[t]he state provides substantial services on the reservation," citing the state's contribution toward highways, education, transportation, and law enforcement. Both non-Indian residents of the reservation who purchase cigarettes from the Tribe and non-resident purchasers who visit the reservation benefit from these services. Furthermore, over three-fourths of those who buy cigarettes on the reservation reside off the reservation, the vast majority of these within California. These individuals benefit from the full array of services provided by the state to its residents and visitors.

The Tribe similarly has an interest in raising revenue to provide tribal services on the reservation. The district court found that the Tribe provides water, law enforcement, sanitation, highway, fish and wildlife, housing, community welfare and recreation, and postal services. Income from the tribal cigarette tax constitutes a portion of the monies used to fund these services. Resident and non-resident purchasers of cigarettes benefit from these tribally-provided services.

The federal government has an interest as a consequence of the general federal goals of strengthening Indian governments and encouraging tribal economic development. The federal government also is actively involved in the Chemehuevis' businesses and has an interest in recovery of the loans made to the Tribe.

The Tribe urges that this case is unlike *Colville*, in which the Supreme Court found

no impermissible interference, because the Chemehuevis market cigarettes as part of a legitimate business enterprise to residents and visitors who also take advantage of the other amenities the Tribe offers. The district court agreed that "[h]ere, it cannot be said that the tax is directed at 'off-reservation' value". Nonetheless, it viewed the case as materially different from cases where states attempted to tax the value of natural resources on an Indian reservation. *See Crow Tribe*, 650 F.2d at 1117 (coal); *White Mountain Apache Tribe v. Arizona*, 649 F.2d 1274, 1281 (9th Cir.1981) (fish and game). We agree. The Chemehuevis are not developing and marketing a tribal resource; they are importing a finished product and reselling it to residents and visitors. *See Cabazon Band of Mission Indians v. County of Riverside*, 783 F.2d 900, 906 (9th Cir.), *appeal pending, consideration of jurisdiction postponed*, — U.S. —, 106 S.Ct. 2888, 90 L.Ed.2d 975 (1986).

■ The Tribe urges that imposition of the state cigarette tax will deprive it of badly needed income. However, we have repeatedly held, as has the Supreme Court, that reduction of tribal revenues does not invalidate a state tax. *See Colville*, 447 U.S. at 157–58, 100 S.Ct. at 2083–84; *Squaxin Island Tribe v. Washington*, 781 F.2d 715, 720 (9th Cir.1986) ("a state tax or regulation is not invalid merely because it erodes a tribe's revenues, even if the tax substantially impairs the tribal government's ability to sustain itself and its programs"); *Crow Tribe*, 650 F.2d at 1116; *White Mountain Apache Tribe v. Arizona*, 649 F.2d at 1282; *Fort Mojave Tribe v. County of San Bernardino*, 543 F.2d 1253, 1258 (9th Cir.1976), *cert. denied*, 430 U.S. 983, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977). In the case at bar, the district court found that the Tribe had failed to demonstrate that without the tax exemption, it would be unable to provide essential tribal services. We have no reason to disturb this finding on appeal.

■ We thus conclude that we must uphold the district court's determination that

the state's legitimate interest in raising revenue to provide substantial services both on and off the reservation outweighs the Tribe's interest in deriving income from cigarettes imported to the reservation and resold on the reservation to non-Indians. Were we to accede to the Tribe's arguments and distinguish *Colville* on the grounds that in *Colville,* non-Indian purchasers were attracted to the reservation solely to purchase tax-free cigarettes, we would raise the spectre of drawing distinctions on a case by case basis, relying on such factors to allow or disallow state taxation as whether non-Indian customers resided on or off the reservation, the existence of other tribal amenities attracting visitors to the reservation, the length of time visitors spent on the reservation, the level of state funding of reservation services, and the amount of tribal effort devoted to marketing the product. We suggest that the *Colville* court did not intend such distinctions. We hold that the Chemehuevis have not established that state taxation of cigarette sales to non-Indians would impermissibly interfere with the Chemehuevis' ability to govern themselves.

## C. *Burden on Indian Commerce*

The Tribe contends that imposition of the state cigarette tax burdens and discriminates against Indian commerce in three ways: the state refuses to apportion its tax by affording a tax credit to purchasers who pay tribal tax, non-Indian purchasers on the reservation are subjected to a multiple tax burden, and the state does not share revenue from the state cigarette tax with the Tribe. None of these arguments has merit.

Under the Multistate Tax Compact to which California is a party, *see* Cal.Rev. & Tax.Code §§ 38001, 38006 (West 1979), California affords a tax credit to persons who pay sales and use taxes to other states that have ratified the Compact. The state also exempts from the state tax small shipments into the state of 400 or fewer cigarettes. *Id.* § 30106. Because the state does not grant similar credits or exemp-

tions to non-Indians who purchase cigarettes on the reservation, the Tribe contends the state has impermissibly burdened Indian commerce.

We disagree. An Indian tribe's sovereignty is not that of a state. *White Mountain Apache Tribe v. Arizona,* 649 F.2d at 1281. The attributes of sovereignty possessed by the Chemehuevi Tribe do not negate the fact that the Chemehuevi Reservation is a part of the State of California. *See id.* at 1281–82. The tax credit under § 38006 is a result of the voluntary Compact entered into by participating states. California need not treat the Chemehuevi Tribe as it treats other states.

Nor does the existence of a multiple tax burden constitute an unconstitutional burden on Indian commerce. *See Crow Tribe,* 650 F.2d at 1115–16; *White Mountain Apache Tribe v. Arizona,* 649 F.2d at 1282; *Fort Mojave Tribe,* 543 F.2d at 1258. As we stated in *Fort Mojave Tribe:*

> There is no improper double taxation here at all, for the taxes are being imposed by two different and distinct taxing authorities. The tribe faces the same problem as other taxing agencies confront when they seek to impose a tax in an area already taxed by another entity having taxing power.

*Id.*

Finally, the failure of the state to include the Tribe in its revenue sharing program does not invalidate the state tax. Under Cal.Rev. & Tax.Code § 30462 (West 1979), the state shares a portion of its cigarette tax revenue with some cities and counties. However, just as the Tribe does not stand in relation to California as another state, neither does it stand in relation to California as a local municipal government. Furthermore, only those California cities and counties that imposed their own local cigarette tax as of August 1967 are eligible to participate in revenue sharing. *Id.* § 30462(b)(2). The Chemehuevi Tribe did not institute its cigarette tax until 1977.

In sum, we conclude that the State of California validly may impose its cigarette

tax on non-Indian customers who purchase cigarettes on the Chemehuevi Indian Reservation.[2]

AFFIRMED.

**2.** State taxation of goods or services other than cigarettes sold on an Indian reservation would likely raise different considerations.