TOMMY G. THOMPSON, Governor
Several months ago, Governor Earl requested an opinion of the Attorney General regarding the application of state liquor licensing laws to a tribal business enterprise operating within the exterior boundaries of the tribal reservation. The opinion request related to the development of the Oneida Rodeway Inn, a tribally-owned hotel and convention center situated on trust lands within the Oneida Reservation. The convention center site is also located within the Village of Ashwaubenon (Village) in Brown County. The Oneida Indian Nation of Wisconsin (Tribe) has issued a tribal liquor license for the project and has applied to the Village for a concurrent state license. The question presented was whether the Tribe is required to secure the state license in addition to the tribal license for its convention center. In addition, the governor asked whether a tribal liquor license would count toward the Village's local quota.
For the reasons discussed below and in an opinion issued on July 23, 1986, 75 Op. Att'y Gen. 123 (1986), which is enclosed, it is my opinion that under 18 U.S.C. § 1161, state liquor licensing laws are applicable to an on-reservation liquor establishment operated in connection with a tribal business enterprise. It is also my opinion that tribally-owned businesses require licenses pursuant to chapter 125, Stats., and that, under the current statute, such licenses count toward the issuing municipality's quota. Finally, based on Rice v. Rehner, 463 U.S. 713
(1983), and on recent federal and state precedent, 69 Op. Att'y Gen. 183 (1980) is withdrawn to the extent it is inconsistent with this opinion. See also Squaxin Island Tribe v.State of Washington, 781 F.2d 715 (9th Cir. 1986); cf. State v.Webster, 114 Wis.2d 418, 338 N.W.2d 474 (1983).
The cited 1980 opinion concluded in part that the legislative history of Pub.L. No. 277, 18 U.S.C. § 1161, and federal policies favoring tribal sovereignty indicate that "neither the state nor its political subdivisions have authority to impose local liquor licensing *Page 81 
requirements on Indian tribes . . . where the Tribe has adopted its own ordinance in conformance with state law." 69 Op. Att'y Gen. at 194. At the time this conclusion was the most logical one available based on the current case law. See United States v.State of New Mexico, 590 F.2d 323 (10th Cir. 1978), cert. denied,444 U.S. 832 (1979); see also McDonnell, Federal and StateRegulation of Gambling and Liquor Sales within Indian Country. 8 Hamline L. Rev. 599, 603 (1985).
In 1983, however, the Supreme Court directly addressed for the first time, in Rice, the question whether 18 U.S.C. § 1161
authorizes individual states to regulate liquor transactions on Indian reservations. Rice held that section 1161 delegated to the states as well as to individual Indian tribes the authority to regulate liquor transactions on Indian reservations.463 U.S. at 730-31 n. 4, 733-34. In so holding, the court reversed a lower court decision which relied heavily on United States v. State ofNew Mexico and expressly rejected the interpretation of 18 U.S.C. § 1161
contained in 69 Op. Att'y Gen. 183.
Following Rice and the court's earlier opinion in United Statesv. Mazurie, 419 U.S. 544 (1975), it is now settled that 18 U.S.C. § 1161
delegates to the individual states and to Indian tribes concurrent jurisdiction over the regulation and sale of liquor within Indian country. Rice, 463 U.S. at 728-29, 733. Under section 1161, liquor transactions in Indian country must be in conformity with both the laws of the state in which such act or transaction occurs and with tribal ordinances approved under the procedures specified in the statute: "The legislative history of § 1161 indicates . . . that Congress intended that state laws would apply of their own force to govern tribal liquor transactions as long as the tribe itself approved these transactions by enacting an ordinance." Id. at 726.
In 75 Op. Att'y Gen. 123 (1986), this office addressed the application under Rice and 18 U.S.C. § 1161 of state liquor laws, including licensing requirements, to liquor establishments owned or operated by either individual tribe members or non-Indians, and located on Indian reservations. That opinion concluded:
 It is my opinion that state liquor laws are applicable to an on-reservation liquor establishment owned or operated by either a tribe member or a non-Indian, regardless of where the business is located within reservation boundaries. These privately-owned *Page 82 
businesses also require licenses pursuant to chapter 125, and those licenses count toward the issuing municipality's quota.
As noted therein, these conclusions are essentially compelled by the holding in Rice that in enacting 18 U.S.C. § 1161, Congress authorized rather than preempted state regulation over private Indian liquor transactions on the reservation,463 U.S. at 726, and by the court's description of congressional intent in enacting section 1161. Id. at 728-29.
The only aspect of your request which goes beyond the issues covered in 75 Op. Att'y Gen. 123 (1986), is the fact that, in the case of the Oneida Rodeway Inn, the tribe itself rather than an individual owns and operates the liquor establishment in question. Because of that fact, it has been suggested that aspects of tribal sovereignty not considered or discussed in Rice
might support a different answer to the question of whether the tribe is required to obtain a state liquor license under section 1161. An examination of both Rice and chapter 125 has convinced me, however, that the tribe is subject to the licensing requirements of chapter 125 if it engages in the sale or distribution of alcoholic beverages.
Certainly Rice itself forecloses any claim that section 1161 preempts the state's authority. Id. at 230-35. Moreover, as the Ninth Circuit has recently and persuasively observed, Rice also effectively forecloses any substantial challenge to the state's authority to regulate or license liquor sales to non-tribal members on grounds that such regulation would infringe tribal sovereignty. Squaxin, 781 F.2d at 719-20.
I presume that the Oneida Rodeway Inn serves the general public rather than solely or even primarily Oneida tribal members. Under such circumstances, any suggestion that the application of state liquor licensing requirements to the tribe itself would infringe on tribal sovereignty appears to be succinctly but firmly rejected in Rice:
 To the extent that Rehner seeks to sell to non-Indians, or to Indians, who are not members of the tribe with jurisdiction over the reservation on which the sale occurred, the decisions of this Court have already foreclosed Rehner's argument that the licensing requirements infringe upon tribal sovereignty.
 If there is any interest in tribal sovereignty implicated by imposition of California's alcoholic beverage regulation, it exists *Page 83 
only insofar as the State attempts to regulate [the] sale of liquor to other members [of the governing tribe on its reservation].
Rice, 463 U.S. at 720-21 (footnote and citations omitted; emphasis supplied); see also Squaxin, 718 F.2d at 719.
In Squaxin the issue was whether the State of Washington could lawfully regulate and tax tribal liquor sales to non-Indians,781 F.2d at 717. The Ninth Circuit held that the State of Washington is authorized to tax tribal liquor sales to non-Indians and to regulate all tribal liquor sales. Id. at 724. Squaxin is recent persuasive precedent, therefore, in support of the conclusion that tribal sovereignty is not infringed by application of a state's alcohol beverage control scheme to liquor sales by Indian tribes.
Other factors reinforce a reading of Rice and section 1161 as requiring that tribes operating liquor establishments on their reservations comply with applicable state licensing requirements. First, other case law interpreting section 1161 analyzes the location of the establishment rather than the nature or identity of the owners as determining the statute's application. SeeMazurie, 419 U.S. at 551-53, 557-58. United States v. Morgan,614 F.2d 166 (8th Cir. 1980); United States v. Mission Golf Course,Inc., 548 F. Supp. 1177, (C.D.S.D. 1982), aff'd, 716 F.2d 907
(8th Cir. 1983); Berry v. Arapahoe Shoshone Tribes,420 F. Supp. 934 (D. Wyo. 1976).
Secondly, there is no suggestion in the plain language of section 1161, in the available legislative history or the case law interpreting that section that the delegation of authority to the state is dependent in any way upon the form or details of the alcohol beverage regulatory scheme a particular state has chosen.See gen. 1953 U.S. Code Cong. and Adm. News, pp. 2399-2401; Rice,463 U.S. at 726 29. Mazurie, for example, arose in Wyoming which apparently licenses liquor sales through local governmental entities not unlike Wisconsin's licensing statute does.409 U.S. at 548. Squaxin arose in Washington, a "monopoly control" state.781 F.2d at 717, 720. Paraphrasing the court's observation inSquaxin, 781 F.2d at 720, nothing in Rice suggests that the result would be different in a local option state such as Wisconsin: "Because there is no tradition of sovereign immunity in the area of liquor regulation . . . and because the activity has potential for substantial impact beyond the reservation, we accord little, if any, weight to an asserted tribal sovereignty interest." Id., citing Rice, 463 U.S. at 725. *Page 84 
There are, of course, substantial differences in structure and detail between Wisconsin's alcohol licensing laws and the regulatory schemes in California and Washington upheld in Rice
and Squaxin. That distinction is unpersuasive, however, because neither of those cases turned on the form of the state licensing scheme involved. Rather, Rice and in turn Squaxin depend on the court's interpretation of the federal legislation, 18 U.S.C. § 1161
and its legislative history. In short, Wisconsin's alcohol licensing scheme appears to be included within the plain language of section 1161. Certainly the Supreme Court did not equivocate when it used the following language to describe section 1161 in Rice:
 [C]ongress viewed § 1161 as . . . legalizing Indian liquor transactions as long as those transactions conformed both with tribal ordinances and state law.
Id., 463 U.S. at 728 (emphasis supplied).
In my opinion, therefore, an Indian tribe must comply with state licensing requirements when it seeks to sell or distribute alcohol on its reservation.
The remaining question is whether a tribal liquor license would count toward the municipality's local quota. This question overlooks the threshold issue of whether Indian tribes, including the Oneida Tribe, are subject to or exempt from the licensing requirements of chapter 125.
Both the legislative policy underlying chapter 125 and the application of ordinary principles of statutory construction lead me to conclude that Indian tribal activities are subject to chapter 125 licensing requirements. Although Indian tribes are neither specifically included within nor excluded from statutory coverage, the statute evinces throughout the explicit legislative intent to establish a comprehensive, uniform, statewide scheme to regulate the sale and distribution of alcohol within the borders of the state. See secs. 125.01, 125.02 and 125.04, Stats. It is true that specific definitions such as those for a "club" or a "municipality" do not apply to an Indian tribe. Nonetheless, the licensing requirements apply generally to "persons." Secs. 125.02
(4) and (11), 125.04 (1), Stats. I assume that the entity operating the Oneida Rodeway Inn (whether the tribe itself or a tribal business corporation) is organized as a "partnership, corporation or association" within the meaning of the term "person" under the statute. Sec. 125.02 (14), Stats. Given *Page 85 
the breadth of the statutory language and the express legislative intent to regulate liquor distribution and sale within the state, I am simply unaware of any basis to imply an exception in the state's liquor licensing requirements for liquor sales by Indian tribes. Cf. Chemehuevi Ind. Tribe v. Cal. St. Bd. of Equal;757 F.2d 1047, 1054-55 (9th Cir. 1985) rev'd in part on other grounds, 474 U.S. ___ 106 S.Ct. 289, reh'g denied, 106 S.Ct. 839
(1985).
As in Chemehuevi, when a legislative body has made a general grant of authority and has neither explicitly created a particular exception nor otherwise indicated an intent to do so with respect to an Indian tribe, it is inappropriate to imply such an exception. Id., 757 F.2d at 1054. This maxim has particular force when the exercise of the state's authority is both constitutionally permissible and consistent with the overall legislative intent of the statute. Accordingly, I conclude that Indian tribes are included within the coverage of chapter 125 by virtue of their inclusion within the statutory definition of "person," see sections 125.02 (14) and 125.04, and must obtain a statutorily required license in order to sell or distribute liquor legally within the state.
The issue of whether state liquor licenses issued to on-reservation liquor establishments count toward the local quota on "Class B" licenses for on-premises sale of intoxicating liquor is discussed at 3-4 of the attached opinion. Because chapter 125 itself currently requires that Indian tribes comply with state liquor licensing requirements, it follows that a Class B license issued to an Indian tribe counts toward the municipality's quota, for the reasons discussed in the attached opinion.
DJH:MM *Page 86