The **FORT BELKNAP INDIAN COMMUNITY OF the FORT BELKNAP INDIAN RESERVATION, Plaintiff–Appellee,**

v.

Joseph P. **MAZUREK, as Attorney General for the State of Montana; Donald A. Ranstrom, as County Attorney for Blaine County, Montana, Defendants–Appellants.**

No. 93–36086.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1994.

Decided Dec. 16, 1994.

---

Deanne L. Sandholm and Harley R. Harris, Asst. Attys. Gen., Helena, MT, for defendants-appellants.

James L. Vogel, Vogel Law Office, Hardin, MT, for plaintiff-appellee.

Before: BEEZER and FERNANDEZ, Circuit Judges, and ORRICK,* Senior District Judge.

BEEZER, Circuit Judge:

The State of Montana seeks enforcement of its liquor laws on Indian reservations. Joseph Mazurek, in his capacity as Attorney General for the State of Montana ("Montana"), appeals the district court's grant of summary judgment in favor of the Fort Belknap Indian Community of the Fort Belknap

---

* The Honorable William H. Orrick, Senior United States District Judge for the Northern District of California, sitting by designation.

Indian Reservation ("Community") in a declaratory judgment action. Montana argues that the district court should have abstained from exercising its jurisdiction. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Montana further argues that the district court erred in holding that it could not enforce its state liquor laws through criminal penalties against tribal members who reside on Indian reservations. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm in part and reverse in part.

## I

Although the declaratory judgment action brought by the Community was filed in December of 1989, the underlying dispute began almost two years earlier. Caroline and Harley Brown operated a grocery store in Hays, Montana, within the confines of the Fort Belknap Indian Reservation. Caroline Brown was a Community member. Although Harley Brown was an Indian, the record does not indicate whether he also was a Community member. The Browns sold, among other sundries, beer and wine. In January of 1988, the Blaine County Attorney filed charges against the Browns for possessing and selling liquor without a license.[1] Mont.Code Ann. § 16–6–301(1) (1989).

The Browns moved to dismiss the prosecution, arguing that Montana lacked criminal jurisdiction over Indians for offenses committed on Indian reservations. The Blaine County District Court disagreed. The Browns sought immediate review in the Montana Supreme Court, which accepted supervisory control jurisdiction. That court decided that Montana could bring a criminal proceeding in state court against an Indian for violations of the state's liquor laws. *Brown v. District Ct.*, 238 Mont. 248, 777 P.2d 877 (1989).

The Community then filed a declaratory judgment action against the State of Montana in federal district court. *See* 28 U.S.C. § 2201. It accused the state of frustrating "th[e] exercise of tribal sovereignty," the

tribe's ability to "exercise reasonable forms of self government," and the ability of the Community "to govern itself." The Community sought a declaration that Montana could not criminally prosecute Indians for liquor law violations on Indian reservations. It also sought permanent injunctive relief to prevent any attempt at enforcing Montana's criminal laws on the Fort Belknap Indian Reservation. Montana moved for summary judgment, arguing that the action was barred by the Eleventh Amendment, and that, in any case, 18 U.S.C. § 1161 permitted it to prosecute Indians for criminal violations of state liquor laws.

The district court granted Montana's motion on Eleventh Amendment grounds, *see Fort Belknap Indian Community v. State of Montana*, 793 F.Supp. 949 (D.Mont.1992), but stated that it would have ruled in favor of the Community on grounds that the state had no jurisdiction to maintain such prosecutions. The district court provided the Community with time to amend its complaint in order to avoid the preclusive effect of the Eleventh Amendment. The Community did so, and the district court reversed itself, granting the Community's motion for summary judgment "to the limited extent the Community seeks declaratory relief concerning the State of Montana's authority to enforce, through criminal prosecutions, its liquor laws on Indian Reservations." No injunctive relief was ordered.

Montana then moved pursuant to Federal Rule of Civil Procedure 60(b) for relief from judgment on grounds that the district court should have refrained from exercising jurisdiction over the controversy under the *Younger* abstention doctrine. The district court denied the motion. Montana appealed.

## II

■ Montana argues that the district court should have dismissed the declaratory judgment action pursuant to *Younger* abstention principles. *Younger v. Harris*, 401 U.S.

---

1. The Browns were initially charged in tribal court with violations of tribal liquor ordinances. That court, however, dismissed the charges without prejudice at the request of a Bureau of Indian Affairs investigator who indicated that prosecution would be sought in either state or federal court.

37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (applying *Younger* principles to declaratory judgment actions). It contends that a state criminal proceeding was ongoing against the Browns, and that principles of comity and federalism should have guided the district court toward noninterference during the pendency of that prosecution. We disagree.

 We review *de novo* whether abstention was required under the *Younger* doctrine. *Wiener v. County of San Diego,* 23 F.3d 263, 266 (9th Cir.1994). In *Younger,* the Supreme Court held that a combination of federal-state comity, federalism, and the limited role for courts of equity "ordinarily require federal courts to abstain from enjoining pending state criminal proceedings." *Bud Antle, Inc. v. Barbosa,* 35 F.3d 1355, 1365 (9th Cir.1994). *Younger* abstention is appropriate if three criteria are met: (1) state judicial proceedings must be ongoing; (2) the state proceedings must implicate an important state interest; and (3) the state proceedings must offer an adequate opportunity to litigate federal constitutional issues. *Kenneally v. Lungren,* 967 F.2d 329, 331 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993). If these three criteria are met, the district court must dismiss the action.[2] *Confederated Salish v. Simonich,* 29 F.3d 1398, 1401 (9th Cir.1994); *Wiener,* 23 F.3d at 266.

 In applying the *Younger* test, we adhere to the basic principle that abstention is an "extraordinary and narrow exception" to a district court's role as adjudicator of a ripe controversy. *Barbosa,* 35 F.3d at 1365 (citations omitted). Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction granted them by Congress. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). In a potential abstention case, the Supreme Court says we are "not to find some substantial reason for the *exercise* of federal jurisdic-

tion" but rather to determine if "exceptional" circumstances exist to justify surrender of jurisdiction. *Benavidez v. Eu,* 34 F.3d 825, 831 (9th Cir.1994) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25–26, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)).

The district court offered two grounds for its decision to exercise its jurisdiction and refuse to abstain under *Younger.* First, the court held that the state did not have a vital state interest in asserting criminal jurisdiction over Indians for crimes committed on Indian reservations. Second, the district court determined that abstention was not appropriate because there were different parties in the federal and state action—the Browns in state court and the Community in federal court. Thus, the Community had no opportunity to raise its federal claim in state court. On appeal, Montana contests both of these grounds. We need address only the first.

The Community correctly argues that Montana cannot demonstrate an important state interest. Although there is no question that Montana has a legitimate interest in the enforcement of its liquor laws through criminal prosecution, the primary issue here is whether the state has jurisdiction to prosecute Indians who violate Montana liquor law on an Indian reservation. That question is one of federal jurisdiction.

In *Sycuan Band of Mission Indians v. Roache,* 38 F.3d 402, 408 (9th Cir.1994), we addressed a similar situation. The Sheriff of San Diego County initiated prosecutions against four Indians for alleged violations of the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721, which applied state gaming laws to Indian reservations. The Tribe brought an action in federal court for declaratory and injunctive relief, which was granted. The Sheriff argued on appeal that *Younger* abstention was appropriate. We disagreed, finding that the State failed to demonstrate an important state interest. We stated that "the threshold issue of the State's

---

**2.** Federal courts have recognized a few limited exceptions to *Younger* abstention. For instance, a federal court should not abstain if the state court action was initiated in bad faith or if the

challenged state law is flagrantly and patently unconstitutional. *Lebbos v. Judges of the Super. Ct.,* 883 F.2d 810, 814 (9th Cir.1989). Neither of these exceptions, however, applies here.

jurisdiction to prosecute is a matter of federal, not state, law." *Roache*, 38 F.3d at 409.[3]

Our analysis is similar here. The threshold question in this case is whether Montana has jurisdiction to prosecute Indians in state court for violations of state liquor laws. Although the Supreme Court has already determined that states may regulate liquor transactions on Indian reservations, *see Rice v. Rehner*, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983), the question of a state's jurisdiction to prosecute is one of first impression. It is an issue of federal law. The state undoubtedly has an interest in enforcing its liquor laws, but only if federal law gives it jurisdiction to do so for violations that occur on an Indian reservation. Because the jurisdictional question is paramount and federal, *Younger* abstention would not be appropriate here.[4]

### III

■ Montana next argues that the district court erred in holding that the state had no jurisdiction to criminally prosecute Indians for violations of state liquor laws occurring on Indian reservations. Montana relies on *Rice v. Rehner*, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983), for the proposition that states have authority to regulate liquor transactions on Indian reservations. Thus, Montana asserts, it must also have the power to enforce its regulations through criminal sanctions for liquor violations. If the state does not have such power, Montana contends, its regulatory authority would be eviscerated.

■ We review *de novo* the district court's decision granting summary judgment. *Jones v. Union Pac. R.R.*, 968 F.2d 937, 940 (9th Cir.1992). Questions of statutory interpretation are also reviewed *de novo*. *Squaxin*

*Island Tribe v. State of Washington*, 781 F.2d 715, 718 (9th Cir.1986).

Two fundamental policy interests clash in this dispute. The state of Montana has an interest in enforcing its liquor laws, if necessary, through criminal prosecutions. The Community has an interest in self-government and tribal sovereignty; matters that are especially jeopardized when an enrolled Tribal member must appear in state court to face criminal prosecution. Today, we must determine which interest should prevail. Because we believe both federal statutes and case law have struck the balance in favor of the state in the narrow context of liquor laws, we reverse the district court and hold that Montana may maintain criminal prosecutions of Indians in state court for on-reservation liquor law violations.

■ State law generally is not applicable to Indian affairs within the territory of an Indian tribe, absent congressional consent. Felix S. Cohen's Handbook of Federal Indian Law 259–60 (1982 ed.) ("Cohen's Handbook"); *see, e.g., United States v. John*, 437 U.S. 634, 651, 98 S.Ct. 2541, 2550, 57 L.Ed.2d 489 (1978). In *Rice v. Rehner*, 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983), the Supreme Court examined whether 18 U.S.C. § 1161 authorized the application of state liquor laws within an Indian reservation. 18 U.S.C. § 1161 provides as follows:

> The provisions of sections 1154, 1156, 3113, 3488, and 3669, of this title, shall not apply within any area that is not Indian country, nor to any act or transaction within any area of Indian country provided such act or transaction is in conformity both with the laws of the State in which such act or transaction occurs and with an ordinance duly adopted by the tribe having jurisdiction over such area of Indian country, certified by the Secretary of the Inte-

---

3. In support of our holding, we relied on a Tenth Circuit opinion that reached the same conclusion. · *See Seneca–Cayuga Tribe v. Oklahoma ex rel. Thompson*, 874 F.2d 709 (10th Cir.1989). In *Seneca*, the court held that, in a case where federal jurisdiction was the "central issue[,] ... the importance of the State's interest in the state litigation is minimal." *Id.* at 714. The court added that when a state court is asked to decide

issues of federal law "in an area in which federal interests predominate, the State's interest in the litigation is in our view not important enough to warrant *Younger* abstention." *Id.*

4. Because we agree with the district court that Montana has failed to demonstrate an important state interest, we need not address whether Montana met other *Younger* elements.

rior, and published in the Federal Register.

In *Rice,* the Court indicated that Congress, through this statute, intended to permit lifting the federal prohibition against the sale and use of liquor on Indian reservations that had existed since 1832. *Rice,* 463 U.S. at 726–28, 103 S.Ct. at 3299–3300. Federal statutes prohibiting the selling of liquor on a reservation remained in effect, *see, e.g.,* 18 U.S.C. § 1154, but § 1161 gave Indian Tribes the option to enact tribal ordinances permitting liquor sale and consumption. Any liquor transactions, however, needed to "conform[ ] both with tribal ordinances and state law." *Rice,* 463 U.S. at 728, 103 S.Ct. at 3300. The tribes in *Rice* had argued that, although state law was to be the benchmark for tribal liquor sales, regulation of liquor was exclusively the province of the federal government and states were preempted from exercising authority in the area. The Court disagreed and said that "[o]ur examination of § 1161 leads us to conclude that Congress authorized, rather than pre-empted, state regulation over Indian liquor transactions." *Id.* at 726, 103 S.Ct. at 3299.

The Court's holding that states had the authority to regulate liquor on Indian reservations was guided primarily by its analysis of "the role of tribal sovereignty." *Id.* at 719, 103 S.Ct. at 3296. Historical notions of tribal sovereignty are the "backdrop" against which federal statutes are read in determining whether state laws have been preempted from being enforced on Indian land. *Cohen's Handbook* at 274–75; *McClanahan v. State Tax Comm'n,* 411 U.S. 164, 172, 93 S.Ct. 1257, 1262, 36 L.Ed.2d 129 (1973). The greater the tradition of tribal independence and self-government, the more reluctant the Court is to infer that Congress has authorized "the assertion of state authority." *Rice,* 463 U.S. at 719, 103 S.Ct. at 3295.

The Court concluded, however, that Indians had been divested of any inherent power to regulate in this area, and did not possess "the usual accoutrements of tribal self-government." *Rice,* 463 U.S. at 724, 103 S.Ct. at 3298 (quoting *McClanahan,* 411 U.S. at 167–68, 93 S.Ct. at 1260); *see Cohen's Handbook* at 307 ("[c]ontrol of liquor has historically been one of the most comprehensive federal activities in Indian affairs...."). The *Rice* Court found that "tradition simply has not recognized a sovereign immunity or inherent authority in favor of liquor regulation by Indians." *Rice,* 463 U.S. at 722, 103 S.Ct. at 3297; *see Squaxin Tribe,* 781 F.2d at 719 ("tribal sovereignty is not infringed" by state's regulation of tribal liquor sales). The Court determined that it would accord "little if any weight" to asserted interests in tribal sovereignty. *Rice,* 463 U.S. at 725, 103 S.Ct. at 3298.

The Court recognized that although states generally had little or no power to regulate the affairs of Indians on a reservation, "that assumption would be unwarranted in the narrow context of the regulation of liquor." *Id.* at 723, 103 S.Ct. at 3298. Distribution of liquor, in the Court's opinion, had a "significant impact" beyond the boundaries of an Indian reservation. *Id.* at 724, 103 S.Ct. at 3298. Indeed, the state has "an unquestionable interest in the liquor traffic that occurs within its borders." *Id.* In light of the lack of tribal sovereignty and the high state interest, the Court read § 1161 as delegating part of the federal government's regulatory authority to tribes, *see United States v. Mazurie,* 419 U.S. 544, 554, 95 S.Ct. 710, 711, 42 L.Ed.2d 706 (1975), and another part to the states. *Rice,* 463 U.S. at 731, 103 S.Ct. at 3301. This dual delegation was consistent, the Court found, with historically "shared concurrent jurisdiction" between the states, tribes, and federal government in this area. *Id.* at 728–29, 103 S.Ct. at 3300–01.

Although the Court did not address the question before us today, it did make several references to criminal prosecution in the area of liquor regulation. The Court noted that Congress had historically permitted concurrent state regulation "through the imposition of criminal penalties on those who supply Indians with liquor, or who introduce liquor into Indian country." *Id.* at 726, 103 S.Ct. at 3299. Later in its opinion, the Court cited an Interior Department treatise in which "the Solicitor of the Interior Department assumed that § 1161 would result in state prosecutions for failing to have a state license." *Id.* at 732, 103 S.Ct. at 3302. The Court disap-

proved of a later Interior Department decision which concluded that states could not prosecute Indians for violations of state liquor laws. *Id.* at 730 n. 13, 103 S.Ct. at 3301 n. 13.

The parties have not provided, nor have we found, case law addressing the question of whether *Rice* should be extended to permit state criminal prosecution for violations of state liquor laws on Indian reservations. The Montana Supreme Court found that such an extension was warranted, indeed necessary, in order to enforce a state regulatory scheme. *Brown,* 777 P.2d at 881 ("[i]f we were to interpret 18 U.S.C. § 1161 as permitting only state licensing of liquor transactions on Indian reservations, but not the power to enforce the same, the state would be powerless to effectuate the intent of Congress that such liquor transactions on reservations be 'in conformity with state law.'").

The district court reached the opposite conclusion, limiting *Rice*'s holding to the proposition that states may regulate liquor, but stopping short of allowing states to exercise criminal jurisdiction. The district court read § 1161 as lifting the previously imposed federal penalties for liquor transactions on Indian reservations only so long as those transactions complied with state liquor laws. The district court found that an act in violation of state liquor laws "necessarily invokes the federal penalties conditionally set aside by section 1161." Thus, the interaction of the federal statutes would never permit state criminal prosecution of an Indian for a violation of state liquor laws on an Indian reservation. Either Indians would be complying with state law under § 1161, or Indians would be violating state law, thus dropping out of § 1161 and reverting back to the federal criminal prohibitions contained in 18 U.S.C. § 1154.

In our judgment, the Montana Supreme Court correctly resolved the issue. All of the reasoning of *Rice* indicates that states should have concurrent jurisdiction to bring criminal prosecutions in this narrow context. It is true that notions of tribal self-government usually preclude either criminal or civil jurisdiction of state courts over Indians.[5] Cohen's Handbook at 349. Giving states criminal jurisdiction would concededly be an even more significant infringement on tribal self-government than mere regulation of liquor transactions. The *Rice* court, however, concluded that tribes had no tradition of self-government in the area of liquor due to pervasive federal control. *See* William C. Canby, Jr., *The Status of Indian Tribes in American Law Today,* 62 Wash.L.Rev. 1, 18–19 (1987) (noting that strength of federal regulation operated to deprive tribe of power and "indirectly increases the power of the state to fill the vacuum"). Because of this conclusion, the *Rice* Court found that it was not necessary that Congress expressly indicate that the State had jurisdiction to regulate liquor. *Id.* at 731–33, 103 S.Ct. at 3302–03. The same reasoning applies here. Given the unique context of liquor regulation and enforcement, it would not be a severe erosion of tribal sovereignty to interpret § 1161 as authorizing the prosecution of Indians in state court for liquor violations on reservations. *See* Canby, *supra,* at 19 (*Rice* dealt with "the unusual subject of liquor regulation").

Section 1161 provides for tribal and state regulation of liquor. The Community contends that the tribe can, and should, prosecute Indians for violations of state law. It follows logically, however, that states should have jurisdiction to prosecute Indians for violations of state law. Montana has the primary interest in the enforcement of its own liquor laws. The power to regulate is a broad power. *See, e.g., Chickasaw Nation v. State of Oklahoma,* 31 F.3d 964 (10th Cir. 1994) (power to regulate under § 1161 can include power to tax). It is broad enough to include the power to enforce state regulations through criminal penalties. Although criminal enforcement is necessarily intrusive,

---

**5.** Of course, some states have assumed jurisdiction over both criminal and civil matters on Indian reservations pursuant to Public Law 280, 18 U.S.C. § 1162. These states include California, Minnesota (in part), Nebraska, Oregon (in part), Wisconsin (in part), and Alaska. *See* Cohen's Handbook at 362–72 (reviewing jurisdiction under Public Law 280). Although the *Rice* case arose in California, the Court explicitly relied on § 1161 and not on § 1162. Our holding today neither relies on nor implicates § 1162.

it is one method by which Montana enforces its liquor laws. Because jurisdiction is concurrent between the tribe and state, both should be able to begin criminal prosecutions for violations of their respective laws.[6]

We find the district court's attempt to limit *Rice* unpersuasive because its opinion gave § 1161 an unjustifiably narrow reading. The *Rice* Court broadly found that Indian Tribes have no sovereignty interest and no self-government interest in liquor regulation. The Court further found that Congress affirmatively authorized state regulation. The district court's reading of *Rice* would give the states no power at all, but merely allow the federal government to enforce state law. This interpretation of § 1161 was rejected in *Rice.*

Furthermore, the district court's support for its holding that state law was to be a "standard of measurement" to be applied in federal criminal proceedings is not strong. It relies on language from Justice Blackmun's dissent in *Rice* and on language from Cohen's Handbook, which was published before the *Rice* decision. In contrast, the Court in *Rice* indicated that "state laws would apply of their own force to govern tribal liquor transactions." 463 U.S. at 726, 103 S.Ct. at 3299. Section 1161 is an affirmative grant of power to the states, not merely a standard for federal courts to apply.

The district court's analysis also fails because it would operate to deprive Indian Tribes of jurisdiction to criminally prosecute violations of tribal liquor ordinances. If an Indian did not comply with a tribal liquor ordinance, under the district court's reading of the statutory scheme, § 1161 would not apply and the Indian would be subject only to federal penalties. This system would deprive Indian tribes of their right to enforce their own ordinances, and would amount to a greater loss of tribal self-government and sovereignty than permitting states to criminally prosecute Indians for violations of state law.

We need not address here the scope of federal criminal jurisdiction over Indians for liquor violations.[7] It is enough to recognize that federal jurisdiction to prosecute is not exclusive. Indeed, other federal statutes reveal that the federal government is capable of making clear its intention to retain exclusive jurisdiction when state laws or issues are involved. *See, e.g.,* 18 U.S.C. § 1153 (Indians are subject to "exclusive jurisdiction of the United States" for various major crimes committed in Indian country); 18 U.S.C. § 1166(d) ("United States shall have exclusive jurisdiction over criminal prosecutions of violations of state gambling laws that are made applicable under this section to Indian country").

IV

Several additional arguments of the Community require consideration.

The Community argues that *Rice* did not overrule or limit *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), which had held that Indian Tribes had been delegated power by § 1161 to regulate liquor transactions. The *Rice* Court later held that states also received comparable delegated power. *Mazurie* does not provide any support for the Community because it did not address the question of criminal enforcement of a state's laws. It involved the power of the federal government to prosecute a non-Indian for a violation of a tribal ordinance. The Community adds that Congress has the power to supercede state jurisdiction in Indian country. This is, of course, true. Here, however, the statute at issue grants the states such authority.

The Community relies on *Seymour v. Superintendent of Washington State Penitentiary,* 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962), for the proposition that states

---

6. Of course, the federal government also has an interest in enforcing its law, but it has indicated no interest in enforcing individual state's laws. Section 1161 expresses an affirmative grant for states to regulate and no commensurate interest in exclusive federal enforcement.

7. The *Rice* court also declined to address the scope of federal criminal jurisdiction because the federal government was not a party to that case. Here, the federal government is similarly not a party, and a determination of its power or jurisdiction beyond the determination that it is not exclusive, is unnecessary.

have no jurisdiction to prosecute Indians for offenses which are committed on Indian reservations. *Seymour* is inapposite. It relied on 18 U.S.C. § 1153, which explicitly provided that the United States had "exclusive jurisdiction" over certain crimes committed by Indians against Indians in Indian country. *Id.* at 352 n. 2, 82 S.Ct. 424, 425 n. 2. Here, no such clear congressional intent to reserve federal jurisdiction is present.[8]

■ The Community also relies on *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), which held that tribal courts have no jurisdiction to criminally prosecute non-Indians. The Community argues that the reverse should be true: the state has no jurisdiction to criminally prosecute Indians. In *Oliphant*, however, there was no "congressional authorization"; the tribes merely argued that criminal jurisdiction should "flow[ ] automatically" from their retained inherent powers. *Id.* at 195–96, 98 S.Ct. at 1014. The Court held that, "absent affirmative delegation of such power by Congress," Indians had no criminal jurisdiction over non-Indians. *Id.* at 208, 98 S.Ct. at 1021. Here, Montana does not argue, indeed it cannot argue, that it has inherent criminal jurisdiction. States generally have no criminal jurisdiction over Indians for acts committed on Indian reservations. It argues that, in the limited field of liquor enforcement, it has criminal jurisdiction pursuant to the congressional mandate of 18 U.S.C. § 1161 as interpreted by *Rice v. Rehner*. *Oliphant* does not affect the result here.

■ The Community further argues that Montana had never before exercised its jurisdiction to criminally prosecute Indians for conduct on Indian reservations. It observes that the tribal courts are available as easy and convenient forums for prosecution. It further contends that it did not intend to grant jurisdiction to the state to criminally prosecute Indians. These arguments are

unavailing. The only question here is whether Montana has the power to bring criminal prosecutions in the narrow context of liquor violations. Whether it has done so in the past or whether prosecution in a tribal forum would be more convenient is irrelevant. Although Montana presumably could agree, and perhaps should agree, to work with tribal courts in prosecuting Indians for violations of state liquor laws, it is not required to do so. Also irrelevant is whether the Tribe intended to cede jurisdiction to the state. Montana has been granted jurisdiction by Congress, thus the Tribe's approval is not necessary.

AFFIRMED in part, REVERSED in part.

---

8. Similarly, our recent opinion in *Sycuan Band of Mission Indians v. Roache*, 38 F.3d 402 (9th Cir.1994), is of no support to the Community. The statute at issue in that case, the Indian Gaming Regulatory Act, provided that "The United States shall have exclusive jurisdiction over

criminal prosecutions of violations of State gambling laws that are made applicable under this section to Indian country...." *Id.* at 406. Thus, the state's lack of criminal jurisdiction was made explicit by Congress.