*741 OPINION OF THE COURT
John T. Buckley, J.
This proceeding is an application for confirmation of a liquor seizure. (Tax Law § 1845.) The issues raised require this court to carefully consider the interrelationship of three sovereign governments — the United States, the State of New York and the Saint Regis Mohawk Tribe. Although this undertaking had at first appeared to involve complex and vexing issues of power, authority and right, this court has concluded that the dispositive question can be stated quite simply: Has the Federal Congress preempted the State of New York from regulating the importation of liquor by an Indian tribe?
For the reasons set forth below, this court finds that the Federal Congress has not preempted the traditional police power of New York State to regulate a matter of uniquely local concern — the importation of alcoholic beverages. The dependent sovereignty of the Saint Regis Mohawk Tribe, while broad enough to sustain a claim to be free from direct State taxation, is nonetheless subject to the sovereign authority of the State of New York in the manner and through the means sought to be enforced in this proceeding. Far from preempting State activity in this area, Federal laws and the judicial glosses thereon make it clear beyond serious argument that the State of New York may require tribal alcoholic beverage distributors to comply with the same provisions of State registration and record keeping which apply to any other person or entity within New York State who import alcoholic beverages. A tribal alcoholic beverage distributor does not, pursuant to Federal laws or due to some inherent "sovereign authority”, possess an immunity from compliance with reasonable State regulation of such importation.
The facts are not in dispute. During the morning of Wednesday, March 22, 1995, Trooper George E. Hopper participated in a truck roadcheck on Route 12 northbound at a rest area just north of Route 365 in the Town of Trenton, Oneida County. At about 11:00 a.m., a tractor-trailer operated by Steven B. La Valley entered the rest area. The driver told the Trooper that he was delivering liquor to the Saint Regis Indian Reservation. Papers in the possession of the driver did not include the New York State Department of Taxation and Finance (the Department of Taxation ) "Manifest Form For Liquors MT-132”. No person nor entity identified in these papers is listed with the Department as a registered distributor of liquor.
*742 The tractor-trailer contained 24 pallets of liquor consisting of 1,750 cases, each case containing six 1.75 liter bottles of liquor equaling a total of 18,375 liters. The St. Regis Mohawk Tribe (the Tribe) imported or caused to be imported into New York State these liquors for delivery to the St. Regis Indian Reservation. The Trooper called Investigator George P. Appier of the Department, who arrived at the roadcheck location at approximately 12:30 p.m.; the driver was arrested and the liquor was seized.
On May 30, 1995, the Tribe moved this court to require the Department of Taxation to release the seized liquor, to dismiss the complaint in the action, to grant the Tribe a preliminary injunction prohibiting the Department from seizing any further liquor owned by or in transit to the Tribe, and to impose sanctions against the Department for commencing and prosecuting a frivolous proceeding. The Tribe asserted as a basis for this motion, inter alia, that the State ability to regulate the importation of alcoholic beverages through compliance with registration requirements enforced by the Department of Taxation is preempted by either Federal law or by the sovereign immunity of the Tribe.
I. STATE LIQUOR REGULATION, TRIBAL IMMUNITY AND PREEMPTION
The United States Supreme Court already has determined that States may regulate liquor transactions on Indian reservations. (Rice v Refiner, 463 US 713 [1983].)
Rice (supra) pitted a Federally licensed Indian trader against the State of California. Refused an exemption from California’s law requiring a State license in order to sell liquor for off-premises consumption, the trader who operated a general store on an Indian reservation filed suit in Federal District Court seeking a declaratory judgment that she did not need a State license. The District Court dismissed the suit, holding that respondent was required to have a State license under 18 USC § 1161. The Court of Appeals reversed, holding that section 1161 preempts State licensing and distribution jurisdiction over tribal liquor sales in Indian country. The United States Supreme Court, reversing the Court of Appeals, held that California could properly require the trader to obtain a State license in order to sell liquor for off-premises consumption. Rice highlights the caution with which one must approach earlier decisions which sometimes contain dicta appearing to support an overly constricted view of State sovereignty vis-a *743 vis the dependent sovereignty of Indian tribes. Capping several decades of shifting jurisprudence on the relationship of the Federal, State and tribal sovereigns, Rice provides the criteria for judging whether a State has overstepped the rather broad boundaries of a shared jurisdiction with the Federal Government with respect to Indian tribes.
A. The Rice Test
In Chickasaw Nation v State of Oklahoma (31 F3d 964, 967-968 [10th Cir 1994]), the court succinctly summarized the holding in Rice (supra) as follows:
"The Court set out a two-part test to determine when state regulation of activities in Indian country is preempted Id. at 718 * * * Such preemption occurs when application of state law: 1) 'would interfere with reservation self-government, ’ or 2) 'would impair a right granted or reserved by federal law.’ Id. (quoting Mescalero Apache Tribe v. Jones, 411 U.S. 145, 148, 93 S.Ct. 1267, 1270, 36 L.Ed.2nd 114 (1973). In determining whether application of state law would interfere with Indian self-government, the court must consider the tradition of Indian sovereignty. If there is a tradition of Indian sovereignty in the area concerned, then an explicit statement from Congress providing that state law shall apply is usually required. Id. 463 U.S. at 719-20, 103 S.Ct. at 3295-96. The Rice Court concluded that rtradition simply has not recognized a sovereign immunity or inherent authority in favor of liquor regulation by Indians. ’ Id. at 722, 103 S.Ct. at 3297.
"Turning to the second prong of the test, the Court considered whether the state liquor licensing provisions were preempted by federal law. The Court held that, in enacting 18 U.S.C. §1161, Congress intended to delegate both to the states and to the tribes, its authority to regulate liquor transactions. Id. at 730-31, 103 S.Ct. at 3101-02. Accordingly, the Court held that section 1161 authorized state regulation rather than preempting it, and the state could properly require tribe members to obtain a state liquor license. Id. at 734, 103 S.Ct. at 3303.” (Emphasis added; see 18 USC § 1161.)
In Fort Belknap Indian Community v Mazurek (43 F3d 428 [9th Cir 1994]), the court, applying Rice’s principle that States may regulate liquor transactions on Indian reservations, determined that Montana may maintain criminal prosecutions of Indians in State courts for on-reservation liquor law violations. Far from "pre-emption” of State regulation of liquor importation and distribution, Federal statutory and decisional *744 law explicitly recognizes State sovereignty over Indians, tribes and others conducting activities on reservations.
18 USC § 3669, entitled "Conveyances carrying liquor” which provides for "seizure, libel, and forfeiture” of "[a]ny conveyance” used "in introducing or attempting to introduce intoxicants into the Indian country, or into other places where the introduction is prohibited by treaty or enactment of Congress”, was enacted in 1948, at which time alcoholic beverages were prohibited from all Indian country and reservations. This statute was continued and renumbered in 1984 as part of the Comprehensive Crime Control Act of 1984 in order to "enhance the use of forfeiture, and in particular, the sanction of criminal forfeiture, as a law enforcement tool.” (1984 US Code Cong & Admin News 3182, 3374.) The Federal statutes which legalized the importation and distribution of liquor into Indian reservations did not vest tribes with exclusive jurisdiction over such activity. By the same measure, Federal statutes do not reflect a congressional determination that States are without the authority and the power to regulate such importation and distribution or to enforce such regulation. In the absence of a demonstration of such a Federal legislative determination, there can be no preemption of State jurisdiction.
Reading 18 USC § 3669 with section 1161, against the backdrop of the Rice test, it is indisputable that section 1161 authorized rather than preempted State regulation of Indian liquor transactions including forfeiture as provided for in New York’s Tax Law.
B. Tribal Immunity
The St. Regis Mohawk Tribe has claimed that enactment of a tribal alcohol law pursuant to Federal law constitutes another form of "pre-emption” effectively displacing the ability of the State of New York to regulate the importation and distribution of alcoholic beverages in any manner. Such an assertion claims too much and is based on no discernable Federal authority.
Reliance upon tribal sovereignty as a basis for curbing the State of New York’s efforts to control the illegal import and sale of liquor is a futile effort. Arguments based upon the Tribe’s historical claims to independence in the importation and distribution of such a commodity are singularly defective. The Rice Court specifically singled out the trade in liquor as one upon which a tribe would be unable to base an argument resting upon historical practice:
*745 "With respect to the regulation of liquor transactions, as opposed to the state income taxation involved in McClanahan, Indians cannot be said to 'possess the usual accoutrements of tribal self-government.’ McClanahan, 411 U.S., at 167-168.
"The court below erred in thinking that there was some single notion of tribal sovereignty that served to direct any pre-emption analysis involving Indians. See 678 F.2d, at 1348. Because we find that there is no tradition of sovereign immunity that favors the Indians in this respect, and because we must consider that the activity in which Rehner seeks to engage potentially has a substantial impact beyond the reservation, we may accord little if any weight to any asserted interest in tribal sovereignty in this case.” (Rice v Rehner, 463 US 713, 724-725 [1983], supra.)
Based upon Rice v Rehner (supra), this court determines that in the instant case the adoption, publication, and approval of the tribal Alcoholic Beverage Control Act by the Secretary of the Interior does not preempt the State from regulating the transportation and distribution of liquor to an Indian tribe and reservation.
n. chapter 508
The specific State laws which the Department of Taxation seeks to enforce through this confirmation proceeding and which the Tribe seeks to have nullified by its motion to dismiss were enacted in 1993 as part of New York State’s ongoing efforts to regulate the importation and distribution of alcoholic beverages. As part of the review contemplated by Rice (supra), this court will carefully look at the justification for such regulation and then at the details of the statutory and regulatory scheme.
A. Justification
In the expressed motivation for chapter 508 of the Laws of 1993, the State pointed to oif-reservation effects (liquor tax evasion) that necessitated this new State regulation.
That justification was adumbrated in a letter from Commissioner Wetzler to Governor Cuomo (included as appendix A of affirmation of Michael Rhodes-Devey dated May 26, 1995) which stated, in pertinent part:
"Industry stated that there was significant liquor tax evasion occurring at the importation and retail levels (both off-and on-premises) and the evasion was having an impact on legitir *746 mate businesses. After examining the circumstances and discussing this issue with the Advisory Group, this Department was of the opinion that evasion was occurring and that legitimate businesses were being injured by the unlawful activity * * *
"The object of this bill is to supply the requisite enforcement tools to deal with persons seeking to bypass the beverage tax system. The bill is aimed at stemming the flow of untaxed product being imported and distributed in this State; the untaxed product finds its way to retailers where it is sold for off-premises consumption and to bars, restaurants and similar establishments where it is sold for on-premises consumption. This bill is remedial in purpose.”
In the case at bar, the State has an evident, legitimate and substantial regulatory interest in controlling off-reservation effects (liquor tax evasion) of the importation and distribution of alcoholic beverages into the St. Regis Mohawk Tribe Reservation. There thus existed ample justification for the State Legislature to enact the regulatory scheme of chapter 508. The court can discern no Federal bar to such State regulation and no legitimate Federal interest which would be served by inviting tribal frustration of such State policing power. To accord the St. Regis Mohawk Tribe the immunity from State regulation which it seeks would countenance wholesale evasion of New York State liquor import and distribution laws. At oral argument in this case, while the Tribe declined to recognize any limitation of its self-declared sovereign rights, it conceded that if the State of New York prohibited the importation and distribution of alcoholic beverages within the State, Federal law would not support any claim that the Tribe could still import or distribute liquor. Surely, if the State of New York has the sovereign power to prohibit, it must, of necessity, have the lesser power to regulate, including the imposition of a requirement that proper manifests accompany liquor shipments and that importation be done by registered wholesalers.
B. The State Statute
Chapter 508 of the Laws of 1993 provides, in relevant part, as follows:
"The commissioner, upon the application of a distributor, shall register such distributor in suitable books to be kept by the department for that purpose, conditioned upon the obtaining of appropriate licenses pursuant to the alcoholic beverage control law, and the continuance of such license shall be a *747 continuing condition of registration as a distributor under this article. The application shall be in a form and contain such data as the commissioner shall prescribe. No distributor, unless so registered, shall make any sale of alcoholic beverages within this state, except a sale, if any, as to which this state is without power to impose such condition.” (Codified as Tax Law § 421.)
"[That a transporter of] more than ninety liters of liquors * * * in this state must have in his * * * possession a manifest, invoice or other document * * * and such other information as the commissioner may require pursuant to rule or regulation * * * The absence of the manifest, invoice or other document required by this section shall give rise to the presumption that the liquors being transported are being imported or caused to be imported into this state for sale or use therein by other than a registered distributor. Moreover, the absence of * * * (2) the name of a registered distributor on the manifest, invoice or other document * * * shall give rise to a presumption that such liquors are being so imported or caused to be imported into this State, for sale or use therein, by other than a registered distributor. Such presumptions may be rebutted by substantial evidence to the contrary.” (Codified as Tax Law § 428 [2].)
C. Special Rules
Pursuant to the authority warranted by chapter 508, the State Commissioner of Taxation and Finance filed and published, effective January 19, 1994, at 20 NYCRR part 323, Special Rules For All Distributors Of Liquors And All Transporters Of Liquors, which states, in pertinent part, as follows: "Distributor * * * means (i) any person who imports or causes to be imported into New York State any liquors for sale or use in this State.” (20 NYCRR 323.1 [e] [1].) "[A]ny person who is a distributor of liquors * * * must be registered with the Department of Taxation and Finance. Unless so registered, no person may engage in activities in the State as a distributor * * * with respect to liquors.” (20 NYCRR 323.2.)
The Special Rules require the transporter of more than 90 liters of liquors to carry in his possession the manifest document on the Department form, containing the information required by this section including the name of the registered distributor, and to show the manifest document at the request of an authorized person.
Transporters may apply in writing to the Department to approve a different form. The Department must approve the *748 alternate form prior to its use. The "absence of * * * the name of a registered distributor on the manifest * * * document” (Tax Law § 428 [2]) gives rise to the presumption that the liquors being imported or caused to be imported into the State for sale or use in the State by a person other than the registered owner.
This statute is a regulatory statute, requiring the transporter to complete, possess and produce a "Manifest Form for Liquors MT-132” (Tax Law § 428; 20 NYCRR part 323), requiring the registration of liquor distributors, and requiring the distributor to be identified as such on the State form, or comparable form if a waiver of form is applied for and granted. It is also a forfeiture and a taxing statute. It is the prerogative of the State Legislature to combine these several functions in one statute (ch 508), to determine to amend the Tax Law rather than the Alcoholic Beverage Control Law, and to assign the regulation and enforcement thereof to the Department and police officers rather than the State Liquor Authority. New York Constitution, article V, § 3 clearly provides that it is a legislative function to assign powers and functions to various agencies subject only to explicit constitutional restrictions. For this court to arrogate to itself the power to unilaterally determine the proper allocation of administrative agency functions would place an unreasonable and unconstitutional burden on the legislative process. That this court will not do. Simply because the Legislature determined to have the Department of Taxation enforce discrete activities relating to the importation and distribution of alcoholic beverages does not make such enforcement impermissible State "taxation” of the Tribe.
III. STATE AUTHORITY TO REGULATE TRIBES
Four additional decisions of the United States Supreme Court demonstrate the broad latitude afforded State governments to exercise incidents of their sovereignty, even taxation, even when the dependent sovereignty of Indian tribes might be curtailed or abridged. These cases span the past two decades and demonstrate convincingly that the form of regulation pursued by the New York State Department of Taxation in the present case is well within the proper sphere of legitimate State activity.
Moe v Salish & Kootenai Tribes (425 US 463, 482-483 [1976]) held that Indian retailers on Indian reservations may be required to collect all State taxes applicable to sales to non-Indians and explained that:
*749 "Without the simple expedient of having the retailer collect the sales tax from non-Indian purchasers, it is clear that wholesale violations of the law by the latter class will go virtually unchecked * * *
"The State’s requirement that the Indian tribal seller collect a tax validly imposed on non-Indians is a minimal burden designed to avoid the likelihood that in its absence non-Indians purchasing from the tribal seller will avoid payment of a concededly lawful tax. Since this burden is not, strictly speaking, a tax at all, it is not governed by the language of Mescalero, quoted supra, at 475-476, dealing with the 'special area of state taxation.’ * * * We therefore agree with the District Court that to the extent that the 'smoke shops’ sell to those upon whom the State has validly imposed a sales or excise tax with respect to the article sold, the State may require the Indian proprietor simply to add the tax to the sales price and thereby aid the State’s collection and enforcement thereof.”
Washington v Confederated Tribes of the Colville Indian Reservation (447 US 134 [1980]) held that the imposition of cigarette and sales taxes on on-reservation purchases by nonmembers of the tribe is valid even though, unlike in Moe (supra), each of the tribes imposes its own tax on cigarette sales; and that tribal sellers are obliged to collect and remit sales taxes on sales to nonmembers at tribal smokeshops on reservation lands, and to keep extensive records.
Starkly posing the apparent dilemma of shared jurisdiction of a tribe and a State in taxation matters, the Court (supra, at 138) stated: "[although a variety of questions are presented, perhaps the most significant is whether an Indian tribe ousts a State from any power to tax on-reservation purchases by nonmembers of the tribe by imposing its own tax on the transaction or by otherwise earning revenues from the tribal business.”
The Court answered no, concluding (supra, at 159): "we perceive no conflict between state and tribal law warranting invalidation of the State’s taxes.”
The Court observed (supra, at 158) that: "taxes can be used for distributive or regulatory purposes, as well as for raising revenue.”
With particular salience in the present dispute the Court (supra, at 160) held: "[a]pplying the correct burden of proof to the District Court’s finding, we hold that the Tribes have failed to demonstrate that the State’s recordkeeping requirements for exempt sales are not reasonably necessary as a means of preventing fraudulent transactions.”
*750 Colville (supra) says the burden of proof is on the Tribe to demonstrate that record keeping for the State is so onerous as to be invalid. Tribal sovereignty does not shield the importers of liquor from record keeping and engaging in a wide array of other activities to comply with the requirements of the State sovereign.
Oklahoma Tax Commn. v Potawatomi Tribe (498 US 505 [1991]) held that the State is free to collect sales taxes from nonmembers of the Tribe on Indian land; and the State may collect the sales tax from wholesalers, either by seizing unstamped cigarettes off the reservation, or by assessing wholesalers who supplied unstamped cigarettes to the tribal stores.
The Court (supra, at 513) summed up the significance of the Moe and the Colville cases (supra): "[Moe and Colville] stand for the proposition that the doctrine of tribal sovereign immunity does not prevent a State from requiring Indian retailers doing business on tribal reservations to collect a state-imposed cigarette tax on their sales to nonmembers of the Tribe.”
The Court (supra, at 514) drew a conclusion extremely relevant for a forfeiture case: "And under today’s decision, States may of course collect the sales tax from cigarette wholesalers, either by seizing unstamped cigarettes off the reservation, Colville, supra, at 161-162, or by assessing wholesalers who supplied unstamped cigarettes to the tribal stores. City Vending of Muskogee, Inc. v Oklahoma Tax Comm’n, 898 F.2d 122 (CA10 1990).”
The final case in this quartet can be considered a lineal ancestor of the present case since it involved registration and reporting requirements at least as "intrusive” as those involved here, albeit the commodity involved was tobacco instead of alcohol products. Department of Taxation & Fin. v Milhelm Attea Bros. (512 US —, 114 S Ct 2028 [1994]) held that New York State regulations to collect State sales taxes on unstamped cigarettes do not, on their face, violate the Indian Trader Statutes. The requirements that wholesalers sell untaxed cigarettes only to persons with valid exemption certificates and keep detailed records is no more demanding than comparable measures approved in Colville (supra). The Court (512 US, at — —, 114 S Ct, at 2035-2036) states:
"Moe, Colville and Potawatomi make clear that the States have a valid interest in ensuring compliance with lawful taxes that might easily be evaded through purchases of tax-exempt cigarettes on reservations; that interest outweighs tribes’ mod *751 est interest in offering a tax exemption to customers who would ordinarily shop elsewhere. The 'balance of state, federal, and tribal interests,’ Rice v. Rehner, 463 U.S. 713, 720, 103 S.Ct. 3291, 3296, 77 L.Ed.2d 961 (1983), in this area thus leaves more room for state regulation than in others. In particular, these cases have decided that States may impose on reservation retailers minimal burdens reasonably tailored to the collection of valid taxes from non-Indians.
"A regulation designed to prevent non-Indians from evading taxes may well burden Indian traders in the sense that it reduces the competitive advantage offered by trading unlimited quantities of tax-free goods; but that consideration is no more weighty in the case of Indian traders engaged in wholesale transactions than it was in the case of reservation retailers.
"Respondents vigorously object to the limitation of wholesaler’s tax-exempt cigarette sales through the 'probable demand’ mechanism. We are persuaded, however, that New York’s decision to stanch the illicit flow of tax-free cigarettes early in the distribution stream is a 'reasonably necessary’ method of 'preventing fraudulent transactions,’ one that 'polices against wholesale evasion of [New York’s] own valid taxes without unnecessarily intruding on core tribal interests.’ Colville, 447 U.S., at 160, 162, 100 S.Ct. at 2084-2085, 2085. The sole purpose and justification for the quotas on untaxed cigarettes is the State’s legitimate interest in avoiding tax evasion by non-Indian consumers.” (Emphasis added.)
In the case at bar, the State has a valid interest in ensuring compliance with lawful liquor taxes that might easily be evaded through purchase of tax-exempt liquor on reservations; and the sole purpose and justification of chapter 508 of the Laws of 1993 is the State’s legitimate interest in avoiding tax evasion by non-Indian consumers through this enforcement statute.
Based on the authority of Rice v Rehner (supra) and the At-tea case (supra), this court determines that in the instant case, New York is not preempted from regulating the transportation, distribution and taxation, where appropriate, of liquor to an Indian tribe or reservation.
CONCLUSION
Congress has not preempted the State from regulating the transportation, distribution and taxation, where appropriate, of liquor to an Indian tribe and reservation. Chapter 508 of the Laws of 1993 of New York State is enforceable.
*752 Applying the facts in this case to the law, this court finds:
(1) That the St. Regis Indian Tribe is a distributor under section 421 of the Tax Law, but was not so registered under the Tax Law, nor licensed under the State Alcoholic Beverage Control Law on the date and time of the seizure, although the Tribe did cause the liquors involved to be imported into this State for sale or use within this State.
(2) That at the time of the seizure, the operator of the motor vehicle carrying the liquor did not have in his possession a New York State Manifest MT-132 as required by section 428 of the Tax Law and the Special Rules of the State Commissioner of Taxation and Finance.
(3) That the liquors were being transported and were caused to be imported into this State for sale or use therein by other than a registered distributor.
(4) This court confirms the temporary seizure of the liquor.
The defendant’s motion is denied.
[Portions of opinion omitted for purposes of publication.]