**In re the Matter of 17,325 LITERS OF LIQUOR, A 1986 International Tractor (Vin: 2HSFBJXR3GCA13403) and a 1986 Dorsey Trailer (Vin: 1DTV11X27GW025170).**

No. 95–CV–1508.

United States District Court, N.D. New York.

Feb. 28, 1996.

New York State Department of Law, Albany, NY, for Plaintiffs; Terrence X. Tracy, of counsel.

Breeze, Rhodes–Devey Law Firm, Singerlands, NY, for Defendant 17,325 Liters of Liquor; Michael Rhodes–Devey, of counsel.

Nixon, Hargrave Law Firm, New York City, for Defendants 1986 Tractor and 1986 Trailer; David P. Land, of counsel.

## MEMORANDUM, DECISION AND ORDER

McAVOY, Chief Judge.

Allegedly pursuant to New York Tax Law § 1845, the New York State Department of Taxation and Finance (the "Department") commenced an action in New York Supreme Court, County of Clinton, to confirm the seizure of a tractor-trailer and 17,325 liters of liquor. Claimants to the seized property include the Tribal Council of the St. Regis Mohawk Tribe (the "Tribal Council"), Julia Back Skidders d/b/a Wolf Clan Trucking ("Skidders"), and the Manormead Group, Inc. ("Manormead"). On October 20, these three claimants filed a removal petition pursuant to 28 U.S.C. § 1446, claiming that the Court could exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1362. Before the Court are the Department's motion to remand this action to New York Supreme Court, Skidders' motion to dismiss, and the Tribal Council's motion to dismiss.

## I. Background

On September 30, 1995, the United States Border Patrol stopped a tractor-trailer carrying 17,325 liters of liquor, after it passed from Vermont into the Town of Champlain, Clinton County, New York. The border patrol agent advised his supervisors by radio and requested the Department's assistance. He then requested that the driver, Steven J. Sobotka, accompany the border patrol agents to the United States Border Patrol Station (the "Station") in Champlain. The Department dispatched Excise Tax Investigator Chad Stevens. When Investigator Stevens arrived at the Station, he learned that Mr. Sobotka was an employee of Wolf Clan Trucking and that he was transporting liquor from the Jenkins distillery in Londonerry, New Hampshire, to a warehouse in Hogansburg, New York, presumably for sale or use within New York.

Claimant Skidders apparently owns the tractor and trailer or has them registered in her name. According to the Department, the California-based Manormead had purchased the liquor from Jenkins Spirits, Inc., ("Jenkins"), a New Hampshire corporation, and was the owner and importer of the liquor at the time of the seizure. The Department claims that neither Manormead, Jenkins, the Tribal Council, Wolf Clan Trucking, Skidders, nor any other person or entity connected with the imported liquor was registered by the Department as a distributor.

Article 18, § 421(1) of New York's Tax Law prohibits the importation of liquor into New York for sale or use therein by anyone other than a registered distributor. Article 37, § 1845(a) authorizes designated police and peace officers to seize liquor imported into New York for sale or use therein, together with the means of transportation, when the person importing the liquor or causing it to be imported is not registered pursuant to § 421 as a liquor distributor and the quantity of imported liquor exceeds 90 liters. Allegedly pursuant to § 1845(a), Investigator Stevens seized the tractor-trailer and the liquor on September 30. Section 1845(a) further provides that the Department must move in the Supreme Court of the county where the seizure occurred for an order confirming the temporary seizure. The Department did so, by way of an Order to Show Cause, on October 5. On October 20, the Tribal Council, Skidders, and Manormead filed their notice of removal, asserting 28 U.S.C. §§ 1331, 1337, and 1362 as jurisdictional bases. The Department then filed a motion to remand, in response to which the Tribal Council and Skidders cross-moved to dismiss.

**54**

## II. Discussion

### A. Removal and Remand

 Section 1441(b) of the Judicial Code provides: "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or law of the United States shall be removable without regard to the citizenship or residence of the parties." The Court resolves whether to remand after removal by referring to the complaint at the time the petition for removal is filed. *Rosenberg v. GWV Travel, Inc.*, 480 F.Supp. 95, 96 (S.D.N.Y.1979). For a claim or right to "arise under" the Constitution, treaties, or law of the United States, it must be a necessary element of the plaintiff's claim for relief. *Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989) (citing *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–25, 58 L.Ed. 1218 (1914); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)); *Franchise Tax Bd. v. Construction Laborers Vacation Trust for So. California*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983). As a general matter, an action arises under federal law if federal law creates the cause of action. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808–09, 106 S.Ct. 3229, 3232–33, 92 L.Ed.2d 650 (1986). As the party invoking the Court's jurisdiction, claimants bear the burden to establish the propriety of removal. *Mermelstein v. Maki*, 830 F.Supp. 180, 184 (S.D.N.Y.1993). If federal jurisdiction is dubious, remand is proper, in part because it prevents parties from winning in federal court, only to have an appellate court reverse for lack of subject matter jurisdiction. *See Deats v. Joseph Swantak, Inc.*, 619 F.Supp. 973, 977 n. 12 (N.D.N.Y.1985).

### B. Claimants' Argument

The Department's complaint, like Investigator Stevens' affidavit, mentions only New York Tax Law § 1845 as a basis for seizing the tractor, trailer, and liquor. If, however, on motions for remand, the Court took complaints at face value, few defendants would succeed in maintaining a federal forum after removal. Claimants contend that the Court could have exercised federal question jurisdiction over this action had the Department filed here because regardless of how the Department framed the action in its complaint, it seized the property under the authority of 18 U.S.C. § 1161. Section 1161 provides that federal criminal laws regulating the possession and distribution of liquor in Indian country are inapplicable "to any act or transaction within any area of Indian country provided such act or transaction is in conformity both with the laws of the State in which such act or transaction occurs and with an ordinance duly adopted by the tribe having jurisdiction over such area of Indian country". In *Rice v. Rehner*, 463 U.S. 713, 726, 728–29, 103 S.Ct. 3291, 3299–3300, 3300–01, 77 L.Ed.2d 961 (1983), the Supreme Court noted that § 1161 represents a congressional delegation of authority to the States and the Indian tribes to regulate the use and distribution of alcoholic beverages in Indian country.

 From the general proposition that states have authority over Indian Nations only by virtue of Congressional grants of authority, claimants derive the argument that because New York obtained its authority to enforce its liquor laws on Indian reservations from § 1161, § 1161 is the statutory authority pursuant to which the Department must have acted when it seized claimants' property. Therefore, claimants would have the Court conclude, the Department's cause of action arises under federal law—§ 1161 "created" the cause of action—and the Court may exercise federal question jurisdiction over the pending matter.

### C. Analysis

#### 1. Federal Question Jurisdiction

##### a. Location of Seizure

Claimants' argument, though intriguing, ultimately fails. Although claimants assert that Mr. Sobotka was transporting the liquor to Mohawk Territory when the U.S. Border Patrol stopped him (Mem.Opp.Mtn.Remand at 2), there is no evidence to suggest that the seizures occurred in Indian country. If the seizure occurred outside of Indian country, then the question of whether New York pos-

sesses any authority to enforce its liquor laws on Indian reservations, and if so, from what source it derives such authority, is seemingly irrelevant to the issue before the Court. Nowhere in their papers do claimants argue that New York derives from a federal source its right to regulate the importation of liquor into areas of the State other than Indian country, or that the source of its authority to regulate the importation of liquor into non-Indian country changes from state to federal law when Indians own the imported liquor.[1] Claimants instead seem to presume either that the seizure occurred within Indian country, or that despite § 1161's clear application to "act[s] or transaction[s] within any area of Indian country[,]" the statute applies to Indian-owned liquor located outside of Indian country as well. In the Court's view, the Department's authority to seize Indian-owned liquor outside of Indian country derives from a source other than § 1161, and presumably from New York Tax Law § 1845. A New York appellate court recently reached the same conclusion. *See New York State Department of Taxation and Finance v. St. Regis Group,* 217 A.D.2d 214, 635 N.Y.S.2d 980, 981–82 (1995). However, since neither party addressed this ground for remand, the Court will consider other grounds for remand as well.

### b. Preemption

■ Claimants argue that federal law preempts New York Tax Law § 1845. In that event, regardless of how the Department framed its complaint, the case would be removable to federal court pursuant to 28 U.S.C. § 1441. *See, e.g., Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Union,* 511 F.Supp. 1180, 1187 (S.D.N.Y.1981). Without citing any case authority, claimants aver that "the prior Court determinations in which the seizures of Indian liquor by the Department ... pursuant to Tax Law § 1845 were dismissed as the trial courts found federal preemption." (Mem.Opp.Mtn.Remand at 3–4).

Although the Court is unable to locate any cases supporting claimant's assertion, it did find a recent New York case belying it. *In Re Matter of 1,750 Cases of Liquor,* 166 Misc.2d 739, 633 N.Y.S.2d 702 (N.Y.Sup.Ct. 1995), involved facts strikingly similar to those giving rise to the case at bar. The court first examined the Supreme Court's opinion in *Rice,* which held that the State of California could require a federally-licensed Indian trader to obtain a state liquor license in order to sell liquor for off-reservation consumption, and then considered federal appellate opinions interpreting and applying *Rice.* The court went on to hold that:

> [f]ar from pre-empting state activity ... federal laws and the judicial glosses thereon make it clear ... that the State of New York may require Tribal alcoholic beverage distributors to comply with the same provisions of state registration ... which apply to any other person or entity within New York State who import alcoholic beverages.

*1,750 Cases,* 633 N.Y.S.2d at 704. With respect to the statutes at issue in the case at bar, the court stated that "it is indisputable that § 1161 authorized rather than pre-empted state regulation of Indian liquor transactions including forfeiture as provided for in New York's Tax Law." *Id.* at 706. The Court agrees that § 1161 permits states to regulate the importation of Indian-owned liquor on the same terms as New York regulates other liquor importers, rather than preempts such regulations.[2]

1. Title 18 U.S.C. § 1151 defines "Indian country" as follows:
 (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

2. In *St. Regis Group,* another recent and factually similar New York case, the Appellate Division, citing *Fort Belknap Indian Community of Fort Belknap Indian Reservation v. Mazurek,* 43 F.3d 428 (9th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 49, 133 L.Ed.2d 15 (1995), held that because § 1161 permits states to regulate liquor distribution on Indian reservations and enforce

**56**

### 2. Diversity Jurisdiction

██ In opposition to defendant's motion to remand, claimants argue for the first time that the Court may exercise diversity jurisdiction. The law is well-settled that states are not citizens within the meaning of 28 U.S.C. § 1332. *See Postal Telegraph Cable Co. v. State of Alabama*, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894) ("A state is not a citizen. And ... a suit between a state and a citizen or a corporation of another state is not between citizens of different states...."); *Krisel v. Duran*, 386 F.2d 179, 181 (2d Cir.1967) (quoting and following *Postal Telegraph*), *cert. denied*, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1968). Therefore, when a state agency, such as the Department, sues or is sued, the Court is without a basis for diversity jurisdiction if the state is the real party in interest. *See, e.g., State Highway Comm'n of Wyoming v. Utah Constr. Co.*, 278 U.S. 194, 199–200, 49 S.Ct. 104, 105–06, 73 L.Ed. 262 (1929); *Skandia America Reins. Corp. v. Schenck*, 441 F.Supp. 715 (S.D.N.Y.1977) (citing diversity and Eleventh Amendment cases in which courts have looked to whether state is real party in interest to determine whether suit is barred).

██ Although courts normally assess several factors in order to determine whether the state is a real party in interest, such as whether the agency in question performs an essential government function, an in-depth analyses of these factors is unnecessary where, as here, the agency in question is the state's department of taxation. *See Northeast Fed. Credit Union v. Neves*, 837 F.2d 531, 533–34 (1st Cir.1988) ("In this case, we need not dawdle over the point [of whether an action against the Maine tax assessor is an action against the state]. Revenues are the lifeblood of governments. The state's division of taxation is an integral part of Maine's governmental apparatus. The taxes in question are owed to the state, not to [the tax assessor] personally."); *Commonwealth v. Norman*, 249 Mass. 123, 144 N.E. 66, 68 (1924) ("It is difficult to conceive of any administrative or executive subject in which the commonwealth is more deeply or more directly concerned than the collection of the income and other state taxes.... [T]he state has a primary, intimate and inherently essential relation to the collection of this tax."). The facts of the case at bar present an even more compelling justification for treating New York State as the real party in interest despite the fact that its Department of Taxation and Finance seized the property and commenced the pending action: along with its keen interest in revenue collection, New York would appear to have a considerable interest in the Department's enforcing state laws regulating the importation and distribution of liquor.

### III. Conclusion

██ Because New York State is the real party in interest and because New York State is not a citizen of any state, the parties are non-diverse. Thus, there is no basis for exercising diversity jurisdiction. Nor is there a basis for exercising federal question jurisdiction, as the Department's action arises out of state, rather than federal, law. Neither of claimants' other proposed bases of federal jurisdiction—28 U.S.C. §§ 1337 and 1362—warrant discussion. Therefore, remand to the New York Supreme Court for the County of Clinton is appropriate and consideration of claimants' cross-motions unnecessary.

For the foregoing reasons, it is HEREBY ORDERED that:

Plaintiffs' motion to remand this action to the New York Supreme Court, County of Clinton, is GRANTED.

**SO ORDERED.**

---

those regulations, it follows that "states may exercise the same, or greater, authority over off-reservation activities." 635 N.Y.S.2d at 982–83. This supports the Court's conclusion that rather than preempting New York Tax Law § 1845 and giving rise to the Department's action, § 1161 grants the State authority to regulate the importation of Indian-owned liquor into New York, regardless of its intended destination.