Kevin Hill, Brown County Attorney 601 Oregon Street Hiawatha, Kansas 66434-2283
Dear Mr. Hill:
You request our opinion regarding whether the Sac and Fox Nation of Missouri in Kansas and Nebraska (Tribe) may legally sell liquor by the drink at their casino without violating Kansas law. The Tribe's casino is located on land held in trust for the Tribe by the federal government. We are told that the Tribe has enacted a tribal ordinance pursuant to 15 U.S.C. § 1161 to allow the sale of liquor on this trust land, and that the ordinance is scheduled for publication in the Federal Register at which time it will become effective. We have not been provided with a copy of the ordinance.
Section 26(C) of the Indian Gaming Compact entered between the Tribe and the State provides that "sale, possession and consumption of alcoholic and cereal malt beverages in the gaming facility shall be regulated pursuant to state law as provided in 18 U.S.C. § 1161." Pursuant to 18 U.S.C. § 1154 and 1156 (West 1996 Supp.), it is a crime (with limited exceptions) to sell, introduce or possess intoxicants in Indian country. See also 18 U.S.C. § 3113, 3488 and 3669. Indian country is defined to include "all land within the limits of any Indian reservation under the jurisdiction of the United States Government" (18 U.S.C. § 1151) and tribal trust lands. Citizen BandPotawatomi Indian Tribe of Oklahoma v. Oklahoma TaxCommission, 888 F.2d 1303 (10th Cir. 1989), aff'd inpart, rev'd in part on other grounds 498 U.S. 505,112 L.Ed.2d 1112, 111 S.Ct. 905 (1991). However, a Tribe may be able to overcome these prohibitions pursuant to18 U.S.C. § 1161:
 "The provisions of sections 1154, 1156, 3113, 3488, and 3669, of this title, shall not apply . . . to any act or transaction within any area of Indian country provided such act or transaction is in conformity both with the laws of the State in which such act or transaction occurs and with an ordinance duly adopted by the tribe having jurisdiction over such area of Indian country, certified by the Secretary of the Interior, and published in the Federal Register." (Emphasis added).
The United States Supreme Court has interpreted this provision to authorize, rather than preempt, state regulation of tribal liquor transactions, and held that there was a lack of a tradition of self-government in the area of liquor regulation and therefore the Tribe's assertion of sovereignty in this area was not compelling. Rice v. Rehner, 463 U.S. 713,77 L.Ed.2d 961, 974, 103 S.Ct. 3291 (1983). See also Citizen BandPotawatomi Indian Tribe of Oklahoma v. Oklahoma TaxCommission, 975 F.2d 1459 (10th Cir. 1992) (states may exercise concurrent jurisdiction with tribes over regulation and licensing of liquor transactions on Indian land); Chickasaw Nation v. State ex rel.,Oklahoma Tax Commission, 31 F.3d 964, 968 (10th Cir. 1994) (regulatory authority granted in 18 U.S.C. § 1161
extends to taxation of liquor transactions), aff'd inpart, rev'd in part on other grounds 515 U.S. ___, 132 L. .Ed.2d 400, 115 S.Ct. ___ (1995).
An argument has been advanced that 18 U.S.C. § 1161
simply requires regulation of liquor transactions in accordance with state law, and that if the tribal ordinance parallels state law, then the tribe may be the regulatory entity and the state would have no authority in that regard. However, this argument has been rejected by the Ninth Circuit Court of Appeals in FortBelknap Indian Community v. Mazurek, 43 F.3d 428,434-435 (9th Cir. 1994). Indeed, the facts before the United States Supreme Court in Rice involved a federally licensed Indian trader who was a member of the Tribe having jurisdiction over the land where the liquor sales were occurring, and a tribal ordinance was in place requiring that the sales be in conformance with state law. 463 U.S. at 715-716, 77 L.Ed.2d at 967. The Court nevertheless held that state law requiring state licensure applied, and indicated more than once that the State's authority was concurrent with the Tribe's rather than supplemental: First the Court referenced a 1954 administrative opinion rendered by the Department of the Interior's Solicitor stating that the fact that a tribe has an ordinance authorizing the sale of liquor on its reservation would not impinge upon the authority of the state to license such sales, 463 U.S. at 729,77 L.Ed.2d at 976; then the Court stated its belief that "Congress did not intend to make tribal members `super citizens' who could trade in a traditionally regulated substance free from all but self-imposed regulations,"463 U.S. at 734,77 L.Ed.2d at 979; and finally, in a footnote, the Court noted that 18 U.S.C. § 1161 did not distinguish between substantive and regulatory laws and thus rejected the Court of Appeals determination that Congress had delegated to the tribes the exclusive right to license liquor distribution, 463 U.S. at 734,77 L.Ed.2d at 979, n. 18.
It has also been suggested that if the Tribe itself is the entity wishing to engage in the sale and distribution of liquor that any authority the State may have to regulate liquor is inapplicable. In SquaxinIsland Tribe v. State of Washington, 781 F.2d 715 (9th Cir. 1986), the Ninth Circuit Court of Appeals was faced with the question of whether state law applied to a tribally owned and operated liquor enterprise. The Court held that state law does apply even in these circumstances, at least insofar as the sales were made to non-tribal members. Likewise, the facility at issue in Citizen Band, 975 F.2d 1459, was tribally owned and operated. Thus, we find no basis for reaching a different conclusion than that reached by the United States Supreme Court in Rice based on the fact that there is a tribal ordinance that parallels state law, or that the Tribe may be the entity seeking licensure.
Based on these authorities, it is clear that the Tribe may not engage in liquor transactions in Indian country except as authorized by state law, including provisions requiring that the Tribe first obtain a license from the State. We now look to see what form of licensure would be available to the Tribe for its casino operation. As mentioned previously, the casino is located on trust land. We are told the land was acquired by the federal government on behalf of the Tribe in 1977. The trust land is located in Brown County which is, and has at all times since 1977 been, a "dry" county, meaning it has not opted pursuant to Article 15, Section 10 of the Kansas Constitution and K.S.A. 41-2646 to allow liquor by the drink within the County. Kansas law does not allow licensure of drinking establishments or sale of liquor by the drink in counties that are dry. Kan. Const., Art. 15, § 10(c); K.S.A. 1996 Supp. 41-2642. Counties may elect to authorize liquor by the drink only by county-wide election in favor of such a proposal.Id. Thus, the Tribe would not be eligible for a drinking establishment license. However, class A and B licenses are available to eligible applicants even in dry counties, class A being for non-profit social, fraternal or war veterans' clubs and class B being for profit. K.S.A. 1996 Supp. 41-2601(e) and (f). It does not appear that the Tribe would meet the definition of a social, fraternal or war veterans' club, K.S.A. 41-2634(b), and therefore would be more likely to apply for a class B club license. Whether this particular Tribe would be qualified for licensure is a determination that must be made by the Division of Alcoholic Beverage Control based on facts provided in its application.
In conclusion, both 18 U.S.C. § 1161 and section 26(C) of the Indian Gaming Compact between the State of Kansas and the Sac and Fox Nation of Missouri in Kansas and Nebraska provide for regulation of tribal liquor sales in accordance with state law. The United States Supreme Court in Rice v. Rehner held that 18 U.S.C. § 1161
confers concurrent jurisdiction on the states and the tribes over liquor transactions in Indian country. This grant of authority has been held to include regulatory as well as substantive law. Thus, the Sac and Fox Nation will be required to obtain a state license before beginning liquor sales at the tribal casino. Because the casino is located in Brown County which has not opted to allow drinking establishments within the county in accordance with Article 15, Section 10 of the Kansas Constitution and K.S.A. 1996 Supp. 41-2646, the Tribe may not operate a drinking establishment at the casino. The Tribe may, however, apply for a club B license.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm